1  SUE ELLEN WOOLDRIDGE
   Assistant Attorney General
2  Environment & Natural Resources Division
   U.S. Department of Justice
3
   STEVEN A. KELLER
4  Trial Attorney
   Environmental Enforcement Section
5  P.O. Box 7611
   Washington, D.C.  20044
6  Tel: (202) 514-5465
   Fax: (202) 514-2583
7
   McGREGOR W. SCOTT
8  United States Attorney
   KENDALL J. NEWMAN
9  Assistant United States Attorney
   501 I Street, 10th Floor
10 Sacramento, CA 95814-2322
   Tel: (916) 554-2821
11 Fax: (916) 554-2900

12 Attorneys for Plaintiff United States of America
   (Additional Attorneys Listed on Following Page)
13
                    IN THE UNITED STATES DISTRICT COURT
14                FOR THE EASTERN DISTRICT OF CALIFORNIA

15
16 UNITED STATES OF AMERICA and        )
   STATE OF CALIFORNIA                 )
17 DEPARTMENT OF TOXIC                 )
   SUBSTANCES CONTROL,                 )
18                                     )        Civil No. 2:06-cv-2841-FCD-KJM
                   Plaintiffs,         )
19                                     )
           v.                          )
20                                     )
   UNION PACIFIC RAILROAD CO.,         )
21                                     )
                   Defendant.          )
22 _____ )

23                              **CONSENT DECREE**
24
25
26
27
28

1  BILL LOCKYER
   Attorney General of the State of California
2  TOM GREENE
   Chief Assistant Attorney General
3  THEODORA BERGER
   Senior Assistant Attorney General
4  KEN ALEX
   Supervising Deputy Attorney General
5  MARGARITA PADILLA, SBN 99966
   Deputy Attorney General
6  Office of the California Attorney General
   1515 Clay Street, 20th Floor
7  P.O. Box 70550
   Oakland, CA  94612-0550
8  Telephone: (510) 622-2135
   Facsimile:  (510) 622-2272
9
   Attorneys for Plaintiff California Department of Toxic
10       Substances Control

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2

I. BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

3

II. JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III. PARTIES BOUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

4

IV. DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

5

V. GENERAL PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

6

VI. PERFORMANCE OF THE WORK BY SETTLING DEFENDANT . . . . . . . . . . . . . . . . . . . . . . . . . 9

VII. REMEDY REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

7

VIII. QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . 16

8

IX. ACCESS AND INSTITUTIONAL CONTROLS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

9

X. REPORTING REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

XI. EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS . . . . . . . . . . . . . . . . . . . . . . . . . 22

10

XII. PROJECT COORDINATORS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

11

XIII. ASSURANCE OF ABILITY TO COMPLETE WORK . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

12

XIV. CERTIFICATION OF COMPLETION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

XV. EMERGENCY RESPONSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

13

XVI. PAYMENTS FOR RESPONSE COSTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

14

XVII. INDEMNIFICATION AND INSURANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

15

XVIII. FORCE MAJEURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

XIX. DISPUTE RESOLUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

16

XX. STIPULATED PENALTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

17

XXI. COVENANTS NOT TO SUE BY PLAINTIFFS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

18

XXII. COVENANTS BY SETTLING DEFENDANT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

XXIII. EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION . . . . . . . . . . . . . . . . . . . . . . 48

19

XXIV. ACCESS TO INFORMATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

20

XXV. RETENTION OF RECORDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

21

XXVI. NOTICES AND SUBMISSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

XXVII. EFFECTIVE DATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

22

XXVIII. RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

23

XXIX. APPENDICES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

24

XXX. COMMUNITY RELATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

XXXI. MODIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

25

XXXII. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT . . . . . . . . . . . . . . . . . . . . . . . 55

26

XXXIII. SIGNATORIES/SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

27

XXXIV. FINAL JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

28

1          I. BACKGROUND

2          A.      The United States of America ("United States"), on behalf of the Administrator of

3    the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter

4    pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation,

5    and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606, 9607, against Union Pacific Railroad Company

6    ("Union Pacific" or "Settling Defendant").

7          B.      The United States in its complaint seeks, inter alia: (1) reimbursement of costs

8    incurred by EPA and the Department of Justice for response actions at the McCormick & Baxter

9    Superfund Site in Stockton, California ("the Site"), together with accrued interest; and (2)

10   performance of studies and response work by Union Pacific at the Site consistent with the National

11   Contingency Plan, 40 C.F.R. Part 300 (as amended) ("NCP").

12         C.      In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C.

13   § 9621(f)(1)(F), EPA notified the state of California Department of Toxic Substances Control

14   ("DTSC") of negotiations with Union Pacific, a potentially responsible party, regarding the

15   implementation of the remedial design and remedial action for the soil remedy at the Site, and EPA

16   has provided DTSC with an opportunity to participate in such negotiations and be a party to this

17   Consent Decree.

18         D.      DTSC has joined the United States as co-plaintiff in the complaint filed by the United

19   States against Union Pacific, alleging that Union Pacific is liable to DTSC under Section 107 of

20   CERCLA, 42 U.S.C. § 9607, for DTSC's response costs incurred and to be incurred at the Site,

21   together with accrued interest.

22         E.      In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA

23   notified the U.S. Department of the Interior, National Oceanic and Atmospheric Administration and

24   California Natural Resources Agency of negotiations with potentially responsible parties regarding

25   the release of hazardous substances that may have resulted in injury to the natural resources under

26   Federal trusteeship and encouraged the trustee(s) to participate in the negotiation of this Consent

27   Decree.

28

F.      Union Pacific enters into this Consent Decree without admitting any of the facts alleged in the complaint or any liability to the Plaintiffs arising out of the transactions or occurrences alleged in the complaints, nor does it acknowledge that the alleged release or threatened release of hazardous substances at or from the Site constitutes an imminent or substantial endangerment to the public health or welfare or the environment.

G.      Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the National Priorities List, set forth at Appendix B to 40 C.F.R. Part 300, by publication in the Federal Register on October 14, 1992, 57 Fed. Reg. 199.

H.      In response to what EPA has characterized as a release or a substantial threat of a release of a hazardous substances at or from the Site, EPA commenced on June 30, 1992, a Remedial Investigation and Feasibility Study ("RI/FS") for the Site pursuant to 40 C.F.R. § 300.430.

I.      EPA completed a Remedial Investigation ("RI") Report for the soil and groundwater in July 1998 and EPA completed the RI Report for the sediment in November 1996. EPA completed a Feasibility Study ("FS") Report for the soil and groundwater in April 1999 and EPA completed a FS Report for the sediment in January 1999.

J.      Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the FS and of the proposed plan for remedial action on September 15, 1998, in a major local newspaper of general circulation.  EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action.  A copy of the transcript of the public meeting is available to the public as part of the administrative record upon which the Regional Administrator based the selection of the response action.

K.      The decision by EPA on the remedial action to be implemented at the Site is embodied in a final Record of Decision ("ROD"), executed on March 31, 1999, on which DTSC has given its concurrence.  The ROD includes a responsiveness summary to the public comments. Notice of the final plan was published in accordance with Section 117(b) of CERCLA.

L.      Based on the information presently available to EPA and DTSC, EPA and DTSC believe that the Work will be properly and promptly conducted by the Settling Defendant if conducted in accordance with the requirements of this Consent Decree and its appendices.

1    M.    Solely for the purposes of Section 113(j) of CERCLA, the Remedial Action selected

2   by the ROD and the Work to be performed by the Settling Defendant shall constitute a response

3   action taken or ordered by the President.

4    N.    The Parties recognize, and the Court by entering this Consent Decree finds, that this

5   Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent

6   Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation

7   between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

8    NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

9                                II. Jurisdiction

10    1.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C.

11   §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b).  This Court also has personal

12   jurisdiction over the Settling Defendant.  Solely for the purposes of this Consent Decree and the

13   underlying complaint, Settling Defendant waives all objections and defenses that it may have to

14   jurisdiction of the Court or to venue in this District.  Settling Defendant shall not challenge the terms

15   of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

16                                III. Parties Bound

17    2.    This Consent Decree applies to and is binding upon the United States, DTSC, and

18   Settling Defendant and their respective successors and assigns.  Any change in ownership or

19   corporate status of the Settling Defendant including, but not limited to, any transfer of assets or real

20   or personal property, shall in no way alter Settling Defendant's responsibilities under this Consent

21   Decree.

22    3.    Settling Defendant shall provide a copy of this Consent Decree to each contractor

23   hired to perform the Work (as defined below) required by this Consent Decree and to each person

24   representing Settling Defendant with respect to the Site or the Work and shall condition all contracts

25   entered into hereunder upon performance of the Work in conformity with the terms of this Consent

26   Decree.  Settling Defendant or its contractors shall provide written notice of the Consent Decree to

27   all subcontractors hired to perform any portion of the Work required by this Consent Decree.

28   Settling Defendant shall nonetheless be responsible for ensuring that its contractors and

subcontractors perform the Work contemplated herein in accordance with this Consent Decree. With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with the Settling Defendant within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3). Copies of these notices shall be provided to EPA and DTSC at the time they are sent to each contractor, subcontractor and to each person representing Settling Defendants with respect to the Site or Work.

IV. DEFINITIONS

4.      Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply:

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, *et seq.*

"Consent Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXIX). In the event of conflict between this Decree and any appendix, this Decree shall control.

"Day" shall mean a calendar day unless expressly stated to be a working day. "Working day" shall mean a day other than a Saturday, Sunday, or federal holiday. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

"DTSC" shall mean the state of California Department of Toxic Substances Control and any of its predecessor or successor departments or agencies.

"DTSC Response Costs" shall mean: (i) all past costs, including, but not limited to, direct and indirect costs that DTSC has incurred at or in connection with the Site prior to the effective date of this Consent Decree, and (ii) all future costs that DTSC will incur at or in connection with the Site (including, but not limited to, direct and indirect costs) related to oversight of the Work, but shall

1   not include response costs incurred by DTSC in the event the United States exercises its authority

2   to reopen pursuant to Paragraphs 83 or 84.

3          "Effective Date" shall be the effective date of this Consent Decree as provided in Paragraph

4   108.

5          "EPA" shall mean the United States Environmental Protection Agency and any successor

6   departments or agencies of the United States.

7          "Interest," shall mean interest at the rate specified for interest on investments of the EPA

8   Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October

9   1 of each year, in accordance with 42 U.S.C. § 9607(a).  The applicable rate of interest shall be the

10  rate in effect at the time the interest accrues.  The rate of interest is subject to change on October 1

11  of each year.

12         "National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous

13  Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C.

14  § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

15         "Operational and Functional" or "O & F" shall mean either one year after construction of

16  the soil remedy is complete, or when the soil remedy is determined concurrently by EPA and DTSC

17  to be functioning properly and is performing as designed, whichever is earlier.  EPA may grant

18  extensions to the one-year period as appropriate.

19         "Operation and Maintenance" or "O & M" shall mean all activities required to maintain the

20  effectiveness of the Remedial Action as required under the Operation and Maintenance Plan

21  approved or developed by EPA pursuant to this Consent Decree and the Statement of Work

22  ("SOW").

23         "Paragraph" shall mean a portion of this Consent Decree identified by an arabic numeral or

24  an upper case letter.

25         "Parties" shall mean the United States, DTSC, and Settling Defendant.

26         "United States Response Costs" shall mean (i) all response costs, including, but not limited

27  to, direct and indirect costs, that the United States incurred at or in connection with the Site prior

28  to the Effective Date of this Consent Decree, (ii) all response costs, including, but not limited to,

direct and indirect costs, that the United States incurs in reviewing or developing plans, reports and other items pursuant to this Consent Decree, verifying the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Section IX, Paragraph 27 (including the cost of attorney time and any monies paid to secure access and/or to secure or implement institutional controls, including the amount of just compensation), Section XV, Paragraph 52, and Paragraph 87, and (iii) Interest on all such costs which has accrued pursuant to 42 U.S.C. § 9607(a), provided, however, that for the purposes of this Consent Decree, United States Response Costs shall not include response costs incurred by the United States in the event EPA exercises its authority to reopen pursuant to Paragraphs 83 or 84.

"Performance Standards" shall mean the soil cleanup standards and other measures of achievement of the goals of the Remedial Action, set forth in Section 10 of the ROD and Section 1 of the SOW.

"Plaintiffs" shall mean the United States and DTSC.

"Property" shall mean the property owned by the Settling Defendant at the Site.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 *et seq.* (also known as the Resource Conservation and Recovery Act).

"Record of Decision" or "ROD" shall mean the EPA Record of Decision relating to the Site signed on March 31, 1999, by the Regional Administrator, EPA Region IX, or her delegate, and all attachments thereto.  The ROD is attached as Appendix A.

"Remedial Action" shall mean those activities, except for Operation and Maintenance, to be undertaken by the Settling Defendant to implement the soil remedy in the ROD, in accordance with the SOW and the final Remedial Design/Remedial Action Work Plan and other plans approved by EPA.

"Remedial Design/Remedial Action Work Plan" shall mean the document developed pursuant to Paragraph 12 of this Consent Decree and approved by EPA, and any amendments thereto.

"Remedial Design" shall mean those activities to be undertaken by the Settling Defendant to develop the final plans and specifications for the Remedial Action pursuant to the Remedial Design/Remedial Action Work Plan.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendant" shall mean Union Pacific Railroad Company and its officers, directors, employees, predecessors, successors, parents, subsidiaries and agents.

"Site" shall mean the McCormick & Baxter Superfund Site, encompassing approximately 29 acres, located at 1214 West Washington Street in Stockton, San Joaquin County, California, and depicted generally on the map attached as Appendix C.

"State" shall mean the state of California, including its agencies, departments and instrumentalities and any successor agencies, departments and instrumentalities.

"Statement of Work" or "SOW" shall mean the statements of work for implementation of the Remedial Design, Remedial Action, and Operation and Maintenance at the Site, as set forth in Appendix B to this Consent Decree and any modifications made in accordance with this Consent Decree.

"Supervising Contractor" shall mean the principal contractor retained by the Settling Defendant to supervise and direct the implementation of the Work under this Consent Decree.

"United States" shall mean the United States of America.

"Waste Material" shall mean: (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33), 42 U.S.C. § 9601(33); (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27); and (4) any "hazardous waste," "hazardous substance," "hazardous material" under California Health & Safety Code §§ 25117, 25260 and 25316.

"Work" shall mean all activities Settling Defendant is required to perform under this Consent Decree, except those required by Section XXV (Retention of Records).

## V. GENERAL PROVISIONS

5.    Objectives of the Parties.  The objectives of the Parties in entering into this Consent Decree are to protect public health or welfare or the environment at the Site by the design and

implementation of response actions at the Site by the Settling Defendant, to reimburse response costs of the Plaintiffs, and to resolve the claims of Plaintiffs against Settling Defendant as provided in this Consent Decree.

6.   Commitments by Settling Defendant.  Settling Defendant shall finance and perform the Work in accordance with this Consent Decree, the ROD, the SOW, and all work plans and other plans, standards, specifications, and schedules set forth herein or developed by Settling Defendant and approved by EPA pursuant to this Consent Decree.  Settling Defendant shall also reimburse the United States and DTSC for United States Response Costs and DTSC Response Costs as provided in this Consent Decree.

7.   Compliance With Applicable Law.  All activities undertaken by Settling Defendant pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal and state laws and regulations.  Settling Defendant must also comply with all applicable or relevant and appropriate requirements of all federal and state environmental laws as set forth in the ROD and the SOW.  The activities conducted pursuant to this Consent Decree, if approved by EPA, shall be considered to be consistent with the NCP.

8.   Permits.

a.   As provided in Section 121(e) of CERCLA and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-Site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work).  Where any portion of the Work that is not on-Site requires a federal or state permit or approval, Settling Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

b.   The Settling Defendant may seek relief under the provisions of Section XVIII (Force Majeure) of this Consent Decree for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit required for the Work.

c.   This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

9.      Notice to Successors-in-Title.

a.      At least thirty days prior to the conveyance of any interest in property located within the Site including, but not limited to, fee interests, leasehold interests, and mortgage interests, the Settling Defendant conveying the interest shall give the grantee written notice of (i) this Consent Decree, and (ii) a copy of the land use covenant executed and recorded pursuant to Section IX (Access and Institutional Controls).  At least thirty days prior to such conveyance, the Settling Defendant conveying the interest shall also give written notice to EPA and DTSC of the proposed conveyance, including the name and address of the grantee, and the date on which notice of the Consent Decree and a copy of the land use covenant were given to the grantee.

b.      In the event of any such conveyance, the Settling Defendant's obligations under this Consent Decree, including, but not limited to, its obligation to provide or secure access and institutional controls, as well as to abide by the terms of the land use covenant executed and recorded pursuant to Section IX (Access and Institutional Controls) of this Consent Decree, shall continue to be met by the Settling Defendant.  In no event shall the conveyance release or otherwise affect the liability of the Settling Defendant to comply with all provisions of this Consent Decree, absent the prior written consent of the United States and DTSC.  If the United States and DTSC approve, the grantee may perform some or all of the Work under this Consent Decree.

VI.  PERFORMANCE OF THE WORK BY SETTLING DEFENDANT

10.     Selection of Supervising Contractor.

a.      All aspects of the Work to be performed by Settling Defendant pursuant to Sections VI (Performance of the Work by Settling Defendant), VII (Remedy Review), VIII (Quality Assurance, Sampling and Data Analysis), and XV (Emergency Response) of this Consent Decree shall be under the direction and supervision of the Supervising Contractor, the selection of which shall be subject to disapproval by EPA after a reasonable opportunity for review and comment by DTSC.  Within ten days after the entry of this Consent Decree, Settling Defendant shall notify EPA and DTSC in writing of the name, title, and qualifications of any contractor proposed to be the Supervising Contractor.  With respect to any contractor proposed to be Supervising Contractor, Settling Defendant shall demonstrate that the proposed contractor has a quality system that complies

1   with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental

2   Data Collection and Environmental Technology Programs," (American National Standard, January

3   5, 1995), by submitting a copy of the proposed contractor's Quality Management Plan ("QMP").

4   The QMP should be prepared in accordance with "EPA Requirements for Quality Management

5   Plans (QA/R-2)" (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by

6   EPA.  EPA will issue a notice of disapproval or an authorization to proceed.  If at any time

7   thereafter, Settling Defendant proposes to change a Supervising Contractor, Settling Defendant shall

8   give such notice to EPA and DTSC and must obtain an authorization to proceed from EPA, after a

9   reasonable opportunity for review and comment by DTSC, before the new Supervising Contractor

10  performs, directs, or supervises any Work under this Consent Decree.

11          b.      If EPA disapproves a proposed Supervising Contractor, EPA will notify

12  Settling Defendant in writing.  Settling Defendant shall submit to EPA and DTSC a list of

13  contractors, including the qualifications of each contractor, that would be acceptable to it within

14  thirty days of receipt of EPA's disapproval of the contractor previously proposed.  EPA will provide

15  written notice of the names of any contractor(s) that it disapproves and an authorization to proceed

16  with respect to any of the other contractors.  Settling Defendant may select any contractor from that

17  list that is not disapproved and shall notify EPA and DTSC of the name of the contractor selected

18  within twenty-one days of EPA's authorization to proceed.

19          c.      If EPA fails to provide written notice of its authorization to proceed or

20  disapproval as provided in this Paragraph and this failure prevents the Settling Defendant from

21  meeting one or more deadlines in a plan approved by the EPA pursuant to this Consent Decree,

22  Settling Defendant may seek relief under the provisions of Section XVIII (Force Majeure) hereof.

23          11.     Remedial Design.

24          a.      Within thirty days after EPA's issuance of an authorization to proceed

25  pursuant to Paragraph 10, Settling Defendant shall submit to EPA and DTSC a work plan for the

26  design and implementation of the Remedial Design/Remedial Action for the soil remedy at the Site

27  ("Remedial Design/Remedial Action Work Plan" or "RD/RA Work Plan").  The Remedial

28  Design/Remedial Action Work Plan shall (i) provide for design of the soil remedy set forth in the

1   ROD, in accordance with the SOW and for achievement of the Performance Standards and other

2   requirements set forth in the ROD, this Consent Decree and/or the SOW, and (ii) provide for

3   construction and implementation of the remedy set forth in the ROD and achievement of the

4   Performance Standards, in accordance with this Consent Decree, the ROD, the SOW, and the design

5   plans and specifications.  Upon its approval by EPA, the Remedial Design/Remedial Action Work

6   Plan shall be incorporated into and become enforceable under this Consent Decree.  Within thirty

7   days after EPA's issuance of an authorization to proceed, Settling Defendant shall submit to EPA

8   and DTSC a Health and Safety Plan for the remedial design/remedial action activities which

9   conforms to the applicable Occupational Safety and Health Administration and EPA requirements

10  including, but not limited to, 29 C.F.R. § 1910.120.

11          b.      The Remedial Design/Remedial Action Work Plan shall include the

12  methodologies, plans and schedules for implementation of all remedial design, pre-design, and

13  remedial action tasks identified in the SOW.  These tasks will be based on Site-specific factors and

14  shall include the following items: (1) Site Management Plan ("SMP"); (2) Health and Safety Plan

15  ("HASP"); (3) Sampling and Analysis Plan ("SAP") including a Remedial Design Quality

16  Assurance Project Plan ("RD QAPP") in accordance with Section VIII (Quality Assurance,

17  Sampling and Data Analysis), a Field Sampling Plan ("FSP"), and a Remedial Action Quality

18  Assurance Project Plan ("RA QAPP") in accordance with Section VIII (Quality Assurance,

19  Sampling and Data Analysis); (4) Data Evaluation Report; (5) Preliminary Design submittal; (6)

20  Prefinal Design submittal; (7) Final Design submittal; (8) Construction Quality Assurance ("CQA")

21  Plan; (9) Operations & Maintenance ("O&M") Manual; (10) designation of the RA contractor; (11)

22  identification of and satisfactory compliance with applicable permitting requirements; (12)

23  identification of the RA project team; (13) development and submission of a land use covenant; (14)

24  Prefinal Inspection Report; and (15) Remedial Action Report.  The remedial design tasks may also

25  include a treatability study and a Pre-design Work Plan.

26          c.      Upon approval of the Remedial Design/Remedial Action Work Plan by EPA,

27  after a reasonable opportunity for review and comment by DTSC, and submittal of the Health and

28  Safety Plan for all field activities to EPA and DTSC, Settling Defendant shall implement the

1    Remedial Design/Remedial Action Work Plan.  The Settling Defendant shall submit to EPA and

2    DTSC all plans, submittals and other deliverables required under the approved Remedial

3    Design/Remedial Action Work Plan in accordance with the approved schedule for review and

4    approval pursuant to Section XI (EPA Approval of Plans and Other Submissions).  Unless otherwise

5    directed by EPA, Settling Defendant shall not commence further Remedial Design activities at the

6    Site prior to approval of the Remedial Design/Remedial Action Work Plan.

7             d.       The preliminary design submittal shall include, at a minimum, the following:

8    (1) design criteria; (2) preliminary project delivery strategy and scheduling; (3) preliminary

9    construction schedule; (4) specifications outline; (5) preliminary drawings; (6) basis of design; (7)

10   identification of easement and access requirements; (8) identification of institutional controls and

11   access restrictions.

12            e.       The Pre-Final/Final design submittal shall include, at a minimum, the

13   following: (1) pre-final/final specifications; (2) pre-final/final drawings; (3) pre-final/final basis of

14   design; (4) pre-final/final project delivery strategy and scheduling; (5) draft/final draft O&M

15   manual; and (6) Construction Quality Assurance Project Plan ("CQAPP").  The CQAPP, which shall

16   detail the approach to quality assurance during construction activities at the Site, shall specify a

17   quality assurance official ("QA Official") to conduct quality assurance program during the

18   construction phase of the project.  The QA Official may be an employee of the Supervising

19   Contractor.

20            f.       Settling Defendant may propose a phased approach to the remedial design and

21   remedial action implementation to facilitate more rapid completion of the project, which phased

22   approach shall be subject to EPA's and DTSC's discretionary approval under the EPA/DTSC

23   approval process provided for in this Consent Decree.

24       12.   Remedial Action.

25            a.       Within thirty days after the approval of the final design submittal by EPA,

26   after a reasonable opportunity for review and comment by DTSC, Settling Defendant shall begin

27   implementation of the remedial action based on the schedule presented in the Remedial

28   Design/Remedial Action Work Plan.

b.      The Settling Defendant shall continue to implement the Remedial Action until EPA issues the Certification of Completion of Remedial Action for the soil remedy pursuant to Paragraphs 50.b of Section XIV (Certification of Completion).

13.      Modification of the SOW or Related Work Plans.

a.      If EPA determines, after a reasonable opportunity for review and comment by DTSC, that modification to the work specified in the SOW and/or in work plans developed pursuant to the SOW is necessary to achieve and maintain the Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD, EPA may require that such modification be incorporated in the SOW and/or such work plans, provided, however, that a modification may only be required pursuant to this Paragraph to the extent that it is consistent with the scope of the remedy selected in the ROD.

b.      For the purposes of this Paragraph 13 and Paragraph 50 only, the "scope of the soil remedy selected in the ROD" is: excavation of soil from the eastern half of the Site ("Subarea X"), movement of soil from excavated Subarea X to the western half of the Site ("Subarea Y") and covering the consolidated Subareas X and Y soils with a cap as selected in the ROD.  The major components of this remedy include Site clearance and debris removal; excavation of Subarea X soils; initial grading of the area to be capped; placement of suitable fill; backfilling and grading of the stormwater ponds with a portion of excavated Subarea X soils; consolidation of remaining Subarea X soils in Subarea Y, and cap construction over the contaminated soil; cap maintenance until Operational and Functional; and institutional controls.

c.      If Settling Defendant objects to any modification determined by EPA to be necessary pursuant to this Paragraph, it may seek dispute resolution pursuant to Section XIX (Dispute Resolution), Paragraph 66 (record review).  The SOW and/or related work plans shall be modified in accordance with final resolution of the dispute.

d.      Settling Defendant shall implement any work required by any modifications incorporated in the SOW and/or in work plans developed pursuant to the SOW in accordance with this Paragraph.

1    e.    Nothing in this Paragraph shall be construed to limit EPA's authority to

2    require performance of further response actions as otherwise provided in this Consent Decree.

3    14.    Settling Defendant acknowledges and agrees that nothing in this Consent Decree, the

4    SOW, or the Remedial Design/Remedial Action Work Plan constitutes a warranty or representation

5    of any kind by Plaintiffs that compliance with the work requirements set forth in the SOW and the

6    Work Plans will achieve the Performance Standards.

7    15.    a.    Settling Defendant shall, prior to any off-Site shipment of Waste Material

8    from the Site to an out-of-state waste management facility, provide written notification to the

9    appropriate state environmental official in the receiving facility's state and to the EPA Project

10   Coordinator of such shipment of Waste Material.  However, this notification requirement shall not

11   apply to any off-Site shipments when the total volume of all such shipments will not exceed 10 cubic

12   yards.

13   (1)    The Settling Defendant shall include in the written notification the

14   following information, where available: (1) the name and location of the facility to which

15   the Waste Material is to be shipped; (2) the type and quantity of the Waste Material to be

16   shipped; (3) the expected schedule for the shipment of the Waste Material; and (4) the

17   method of transportation.  The Settling Defendant shall notify the state in which the planned

18   receiving facility is located of major changes in the shipment plan, such as a decision to ship

19   the Waste Material to another facility within the same state, or to a facility in another state.

20   (2)    The identity of the receiving facility and state will be determined by

21   the Settling Defendant following the award of the contract for Remedial Action construction.

22   The Settling Defendant shall provide the information required by Paragraph 15.a(1) as soon

23   as practicable after the award of the contract and before the Waste Material is actually

24   shipped.

25   b.    Before shipping any hazardous substances, pollutants, or contaminants from

26   the Site to an off-Site location, Settling Defendant shall obtain EPA's certification that the proposed

27   receiving facility is operating in compliance with the requirements of CERCLA Section 121(d)(3)

28   and 40 C.F.R.300.440.  Settling Defendant shall only send hazardous substances, pollutants, or

1   contaminants from the Site to an off-Site facility that complies with the requirements of the statutory

2   provision and regulations cited in the preceding sentence.

3                               VII.  <u>REMEDY REVIEW</u>

4            16.      <u>EPA Selection of Further Response Actions</u>.  If EPA determines, at any time, and

5   after a reasonable opportunity for review and comment by DTSC, that the Remedial Action is not

6   protective of human health and the environment, EPA may select further response actions for the

7   Site in accordance with the requirements of CERCLA and the NCP.

8            17.      <u>Opportunity To Comment</u>.  Settling Defendant and, if required by Sections 113(k)(2)

9   or 117 of CERCLA, the public, will be provided with an opportunity to comment on any further

10  response actions proposed by EPA as a result of the review conducted pursuant to Section 121(c)

11  of CERCLA and to submit written comments for the record during the comment period.

12           18.      <u>Settling Defendant's Obligation To Perform Further Response Actions</u>.  If EPA, after

13  a reasonable opportunity for review and comment by DTSC, selects further response actions for the

14  soil remedy at the Site, the Settling Defendant shall undertake such further response actions to the

15  extent that the reopener conditions in Paragraph 83 or Paragraph 84 (United States' reservations of

16  liability based on unknown conditions or new information) are satisfied.  Settling Defendant may

17  invoke the procedures set forth in Section XIX (Dispute Resolution) to dispute (1) EPA's

18  determination that the reopener conditions of Paragraph 83 or Paragraph 84 of Section XXI

19  (Covenants Not To Sue by Plaintiffs) are satisfied, (2) EPA's determination that the Remedial Action

20  is not protective of human health and the environment, or (3) EPA's selection of the further response

21  actions.  Disputes pertaining to the whether the Remedial Action is protective or to EPA's selection

22  of further response actions shall be resolved pursuant to Paragraph 66 (record review).

23           19.      <u>Submissions of Plans</u>.  If Settling Defendant is required to perform the further

24  response actions pursuant to Paragraph 18, Settling Defendant shall submit a plan for such work to

25  EPA for approval in accordance with the procedures set forth in Section VI (Performance of the

26  Work by Settling Defendant) and shall implement the plan approved by EPA in accordance with the

27  provisions of this Decree.

28

VIII.  Quality Assurance, Sampling, and Data Analysis

20.     Settling Defendant shall use quality assurance, quality control, and chain of custody procedures for all treatability, design, compliance and monitoring samples in accordance with "EPA Requirements for Quality Assurance Project Plans (QA/R5)" (EPA/240/B-01/003, March 2001) "Guidance for Quality Assurance Project Plans (QA/G-5)" (EPA/600/R-98/018, February 1998), and subsequent amendments to such guidelines upon notification by EPA to Settling Defendant of such amendment.   Amended guidelines shall apply only to procedures conducted after such notification.  Prior to the commencement of any monitoring project under this Consent Decree, Settling Defendant shall submit to EPA for approval, after a reasonable opportunity for review and comment by DTSC, a Quality Assurance Project Plan ("QAPP") that is consistent with the SOW, the NCP and applicable guidance documents.  If relevant to the proceeding, the Parties agree that validated sampling data generated in accordance with the QAPP(s) and reviewed and approved by EPA shall be admissible as evidence, without objection, in any proceeding under this Decree. Settling Defendant shall ensure that EPA and DTSC personnel and their authorized representatives are allowed access at reasonable times to all laboratories utilized by Settling Defendant in implementing this Consent Decree.   In addition, Settling Defendant shall ensure that such laboratories shall analyze all samples submitted by EPA or DTSC pursuant to the QAPP for quality assurance monitoring. Settling Defendant shall ensure that the laboratories it utilizes for the analysis of samples taken pursuant to this Decree perform all analyses according to accepted EPA methods. Accepted EPA methods consist of those methods which are documented in the "Contract Lab Program Statement of Work for Inorganic Analysis" and the "Contract Lab Program Statement of Work for Organic Analysis," dated February 1988, and any amendments made thereto during the course of the implementation of this Decree; however, upon approval by EPA, after opportunity for review and comment by DTSC, the Settling Defendant may use other analytical methods which are as stringent as or more stringent than the Contract Lab Program - approved methods.   Settling Defendant shall ensure that all laboratories it uses for analysis of samples taken pursuant to this Consent Decree participate in an EPA or EPA-equivalent QA/QC program. Settling Defendant shall only use laboratories that have a documented Quality System which complies with ANSI/ASQC E4-

1   1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and

2   Environmental Technology Programs," (American National Standard, January 5, 1995), and "EPA

3   Requirements for Quality Management Plans (QA/R-2)," (EPA/240/B-01/002, March 2001) or

4   equivalent documentation as determined by EPA.  EPA may consider laboratories accredited under

5   the National Environmental Laboratory Accreditation Program ("NELAP") as meeting the Quality

6   System requirements.  Settling Defendant shall ensure that all field methodologies utilized in

7   collecting samples for subsequent analysis pursuant to this Decree will be conducted in accordance

8   with the procedures set forth in the QAPP approved by EPA.

9       21.   Upon request, the Settling Defendant shall allow split or duplicate samples to be

10  taken by EPA and DTSC or their authorized representatives.  Settling Defendant shall notify EPA

11  and DTSC not less than twenty-eight days in advance of any sample collection activity unless

12  shorter notice is agreed to by EPA.  In addition, EPA and DTSC shall have the right to take any

13  additional samples that EPA or DTSC deem necessary.  Upon request, EPA and DTSC shall allow

14  the Settling Defendant to take split or duplicate samples of any samples it takes as part of the

15  Plaintiff's' oversight of the Settling Defendant's implementation of the Work.

16      22.   Settling Defendant shall submit to EPA three copies and to DTSC two copies of the

17  results (or, if the parties agree, submit electronic copies) of all sampling and/or tests or other data

18  obtained or generated by or on behalf of Settling Defendant with respect to the Site and/or the

19  implementation of this Consent Decree unless EPA and DTSC agree otherwise.

20      23.   Notwithstanding any provision of this Consent Decree, the United States and DTSC

21  hereby retain all of their information gathering and inspection authorities and rights, including

22  enforcement actions related thereto, under CERCLA, RCRA, state environmental laws, and any

23  other applicable statutes or regulations.

24              IX. ACCESS AND INSTITUTIONAL CONTROLS

25      24.   The Settling Defendant shall, within thirty days of the approval of this Consent

26  Decree, execute and record in the Recorder's Office or Registry of Deeds or other appropriate land

27  records office of San Joaquin County, state of California, a land use covenant in substantially the

28

form attached hereto as Appendix D, that is enforceable under the laws of the state of California, regarding the Property.

25. Where access and/or land/water use restrictions are needed to implement the soil remedy at Subarea X as described in this Consent Decree or other Site-wide activities, the Settling Defendant shall from the date of lodging of this Consent Decree and continuing until the issuance of the Certificate of Completion, provide EPA, DTSC, and their representatives and contractors with access at all reasonable times to the Property, for the purpose of conducting any activity related to implementing the soil remedy at Subarea X as described in this Consent Decree or other Site-wide response activities, subject to the requirement that all such persons with access to the Property shall comply with all safety rules and requirements in place for Settling Defendant's own personnel, and that such persons provide their own personal protective equipment as required by those safety rules. The activities for which access is to be granted include,

   a. Monitoring the Work;

   b. Verifying any data or information submitted to the United States or DTSC;

   c. Conducting investigations relating to contamination at or near the Site;

   d. Obtaining samples;

   e. Assessing the need for, planning, or implementing additional response actions at or near the Site;

   f. Assessing implementation of quality assurance and quality control practices as defined in the approved Quality Assurance Project Plans;

   g. Implementing the Work pursuant to the conditions set forth in Paragraph 87 of this Consent Decree;

   h. Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendant or its agents, consistent with Section XXIV (Access to Information);

   i. Assessing Settling Defendant's compliance with this Consent Decree; and

j.     Determining whether the Site or other property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to this Consent Decree.

26.     DTSC and EPA shall cooperate with Settling Defendant in the placement, inspection, operation and maintenance of Remedial Systems on the Property so as not to unreasonably interfere with the beneficial use of the Property by the Settling Defendant or its successors and assigns.  For purposes of this Consent Decree, "Remedial Systems" shall mean the remedial equipment and systems located on the Property, including devices that may be installed in the future, groundwater monitoring wells, groundwater extraction wells and associated infrastructure such as piping.

27.     If the Site, or any other property where access and/or land/water use restrictions are needed to implement the soil remedy at Subarea X as described in this Consent Decree, is owned or controlled by persons other than Settling Defendant, Settling Defendant shall use best efforts to secure from such persons an agreement to provide access thereto for Settling Defendant, as well as for the United States on behalf of EPA, and DTSC, as well as their representatives (including contractors), for the purpose of conducting any activity related to implementing the soil remedy at Subarea X described in this Consent Decree.  EPA and DTSC shall share their access rights to the Site and surrounding areas with Settling Defendant for the purpose of performing the terms of this Consent Decree.

28.     For purposes of Paragraph 27 of this Consent Decree, "best efforts" includes the payment of reasonable sums of money in consideration of access except for those areas where EPA or DTSC have access rights.  If any access or land/water use restriction agreements required by Paragraph 27 of this Consent Decree are not obtained within forty-five days of the date of the request by EPA, Settling Defendant shall promptly notify the United States in writing, with a copy to DTSC, and shall include in that notification a summary of the steps that Settling Defendant has taken to attempt to comply with Paragraph 27 of this Consent Decree.

29.     If EPA determines, after a reasonable opportunity for review and comment by DTSC, that land/water use restrictions in the form of state or local laws, regulations, ordinances or other governmental controls are needed to implement the soil remedy described in this Consent Decree,

1    ensure the integrity and protectiveness thereof, or ensure non-interference therewith, Settling

2    Defendant shall cooperate with EPA's and DTSC's efforts to secure such governmental controls.

3         30.    Notwithstanding any provision of this Consent Decree, the United States and DTSC

4    retain all of their access authorities and rights, as well as all of their rights to require land/water use

5    restrictions, including enforcement authorities related thereto, under CERCLA, RCRA and any other

6    applicable statute or regulations.

7                              X. REPORTING REQUIREMENTS

8         31.    In addition to any other requirement of this Consent Decree, Settling Defendant shall

9    submit to EPA and to DTSC electronic copies of written monthly progress reports that: (a) describe

10   the actions which have been taken toward achieving compliance with this Consent Decree during

11   the previous month; (b) include a summary of all results of sampling and tests and all other data

12   received or generated by Settling Defendant or its contractors or agents in the previous month; (c)

13   identify all work plans, plans and other deliverables required by this Consent Decree completed and

14   submitted during the previous month; (d) describe all actions, including, but not limited to, data

15   collection and implementation of work plans, which are scheduled for the next six weeks and

16   provide other information relating to the progress of construction, including, but not limited to,

17   critical path diagrams, Gantt charts and Pert charts; (e) include information regarding percentage of

18   completion, unresolved delays encountered or anticipated that may affect the future schedule for

19   implementation of the Work, and a description of efforts made to mitigate those delays or anticipated

20   delays; (f) include any modifications to the work plans or other schedules that Settling Defendant

21   has proposed to EPA or that have been approved by EPA; and (g) describe all activities undertaken

22   in support of the Community Relations Plan during the previous month and those to be undertaken

23   in the next six weeks.  Settling Defendant shall submit these progress reports to EPA and DTSC by

24   the tenth day of every month following the lodging of this Consent Decree until EPA notifies the

25   Settling Defendant pursuant to Paragraph 51.b of Section XIV (Certification of Completion).  If

26   requested by EPA or DTSC, Settling Defendant shall also provide briefings for EPA and DTSC to

27   discuss the progress of the Work.

28

32.     The Settling Defendant shall notify EPA and DTSC of any change in the schedule described in the monthly progress report for the performance of any activity, including, but not limited to, data collection and implementation of work plans, no later than seven days prior to the performance of the activity.

33.     Upon the occurrence of any event during performance of the Work that Settling Defendant is required to report pursuant to Section 103 of CERCLA or Section 304 of the Emergency Planning and Community Right-to-know Act ("EPCRA"), Settling Defendant shall within 24 hours of the onset of such event orally notify the EPA Project Coordinator or the Alternate EPA Project Coordinator (in the event of the unavailability of the EPA Project Coordinator), or, in the event that neither the EPA Project Coordinator or Alternate EPA Project Coordinator is available, the Emergency Response Section, Region IX, United States Environmental Protection Agency.  These reporting requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304.

34.     Within twenty days of the onset of such an event, Settling Defendant shall furnish to Plaintiffs a written report, signed by the Settling Defendant's Project Coordinator, setting forth the events which occurred and the measures taken, and to be taken, in response thereto.  Within thirty days of the conclusion of such an event, Settling Defendant shall submit a report to EPA and DTSC setting forth all actions taken in response thereto.

35.     Settling Defendant shall submit four copies and an electronic version of all plans, reports, and data required by the SOW, the Remedial Design/Remedial Action Work Plan, or any other approved plans to EPA in accordance with the schedules set forth in such plans.  Settling Defendant shall simultaneously submit two hard copies and an electronic version of all such plans, reports and data to DTSC.

36.     All reports and other documents submitted by Settling Defendant to EPA and DTSC (other than the monthly progress reports referred to above) which purport to document Settling Defendant's compliance with the terms of this Consent Decree shall be signed by an authorized representative of the Settling Defendant.

XI. <u>EPA Approval of Plans and Other Submissions</u>

37.     After review of any plan, report or other item which is required to be submitted for approval pursuant to this Consent Decree, EPA, after reasonable opportunity for review and comment by DTSC, shall: (a) approve, in whole or in part, the submission; (b) approve the submission upon specified conditions; (c) modify the submission to cure the deficiencies; (d) disapprove, in whole or in part, the submission, directing that the Settling Defendant modify the submission; or (e) any combination of the above.  However, EPA shall not modify a submission without first providing Settling Defendant at least one notice of deficiency and an opportunity to cure within thirty days, except where to do so would cause serious disruption to the Work or where previous submission(s) have been disapproved due to material defects and the deficiencies in the submission under consideration indicate a bad faith lack of effort to submit an acceptable deliverable.

38.     In the event of approval, approval upon conditions, or modification by EPA, pursuant to Paragraph 37.a, .b, or .c, Settling Defendant shall proceed to take any action required by the plan, report, or other item, as approved or modified by EPA subject only to its right to invoke the Dispute Resolution procedures set forth in Section XIX (Dispute Resolution) with respect to the modifications or conditions made by EPA.  In the event that EPA modifies the submission to cure the deficiencies pursuant to Paragraph 37.c and the submission has a material defect, EPA and DTSC retain their right to seek stipulated penalties, as provided in Section XX (Stipulated Penalties).

39.     <u>Resubmission of Plans</u>.

a.     Upon receipt of a notice of disapproval pursuant to Paragraph 37.d, Settling Defendant shall, within thirty days or such longer time as specified by EPA in such notice, correct the deficiencies and resubmit the plan, report, or other item for approval.  Any stipulated penalties applicable to the submission, as provided in Section XX, shall accrue during the 30-day period or otherwise specified period but shall not be payable unless the resubmission is disapproved or modified due to a material defect as provided in Paragraphs 40 and 41.

b.     Notwithstanding the receipt of a notice of disapproval pursuant to Paragraph 37.d, Settling Defendant shall proceed, at the direction of EPA, to take any action required by any non-deficient portion of the submission.  Implementation of any non-deficient portion of a submission shall not relieve Settling Defendant of any liability for stipulated penalties under Section XX (Stipulated Penalties).

40.     In the event that a resubmitted plan, report or other item, or portion thereof, is disapproved by EPA, EPA may again require the Settling Defendant to correct the deficiencies, in accordance with the preceding Paragraphs.  EPA also retains the right to modify or develop the plan, report or other item, after a reasonable opportunity for review and comment by DTSC.  Settling Defendant shall implement any such plan, report, or item as modified or developed by EPA, subject only to its right to invoke the procedures set forth in Section XIX (Dispute Resolution).

41.     If upon resubmission, a plan, report, or item is disapproved or modified by EPA due to a material defect, Settling Defendant shall be deemed to have failed to submit such plan, report, or item timely and adequately unless the Settling Defendant invokes the dispute resolution procedures set forth in Section XIX (Dispute Resolution) and EPA's action is overturned pursuant to that Section.  The provisions of Section XIX (Dispute Resolution) and Section XX (Stipulated Penalties) shall govern the implementation of the Work and accrual and payment of any stipulated penalties during Dispute Resolution.  If EPA's disapproval or modification is upheld, stipulated penalties shall accrue for such violation from the date on which the initial submission was originally required, as provided in Section XX.

42.     All plans, reports, and other items required to be submitted to EPA under this Consent Decree shall, upon approval or modification by EPA, be enforceable under this Consent Decree.  In the event EPA approves or modifies a portion of a plan, report, or other item required to be submitted to EPA under this Consent Decree, the approved or modified portion shall be enforceable under this Consent Decree.

XII. PROJECT COORDINATORS

43.     Within twenty days of lodging this Consent Decree, Settling Defendant, DTSC and EPA will notify each other, in writing, of the name, address and telephone number of their respective

designated Project Coordinators and Alternate Project Coordinators.  If a Project Coordinator or Alternate Project Coordinator initially designated is changed, the identity of the successor will be given to the other Parties at least five working days before the changes occur, unless impracticable, but in no event later than the actual day the change is made.  The Settling Defendant's Project Coordinator shall be subject to disapproval by EPA, after a reasonable opportunity for review and comment by DTSC, and shall have the technical expertise sufficient to adequately oversee all aspects of the Work.  The Settling Defendant's Project Coordinator shall not be an attorney for the Settling Defendant in this matter.  He or she may assign other representatives, including other contractors, to serve as a Site representative for oversight of performance of daily operations during remedial activities.

44.    Plaintiffs may designate other representatives, including, but not limited to, EPA and DTSC employees, and federal and DTSC contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Consent Decree.  EPA's Project Coordinator and Alternate Project Coordinator shall have the authority lawfully vested in a Remedial Project Manager ("RPM") and an On-Scene Coordinator ("OSC") by the National Contingency Plan, 40 C.F.R. Part 300.  In addition, EPA's Project Coordinator or Alternate Project Coordinator shall have authority, consistent with the National Contingency Plan, to halt any Work required by this Consent Decree and to take any necessary response action when s/he determines that conditions at the Site constitute an emergency situation or may present an immediate threat to public health or welfare or the environment due to release or threatened release of Waste Material.

45.    EPA's Project Coordinator and the Settling Defendant's Project Coordinator will meet, at a minimum, on a monthly basis, or less frequently if approved by EPA.  DTSC shall be provided with notice and an opportunity to participate in all such meetings.

XIII.  ASSURANCE OF ABILITY TO COMPLETE WORK

46.    Within thirty days of entry of this Consent Decree, Settling Defendant shall establish and maintain financial security in the amount of $7,200,000 in one or more of the following forms:

a.    A surety bond guaranteeing performance of the Work;

1      b.      One or more irrevocable letters of credit equaling the total estimated cost of

2  the Work;

3      c.      A trust fund;

4      d.      A guarantee to perform the Work by one or more parent corporations or

5  subsidiaries, or by one or more unrelated corporations that have a substantial business relationship

6  with the Settling Defendant; or

7      e.      A demonstration that the Settling Defendant satisfies the requirements of 40

8  C.F.R. Part 264.143(f);

9      47.     If the Settling Defendant seeks to demonstrate the ability to complete the Work

10  through a guarantee by a third party pursuant to Paragraph 46.d of this Consent Decree, Settling

11  Defendant shall demonstrate that the guarantor satisfies the requirements of 40 C.F.R. Part

12  264.143(f).  If Settling Defendant seeks to demonstrate its ability to complete the Work by means

13  of the financial test or the corporate guarantee pursuant to Paragraph 46.d or 46.e, it shall resubmit

14  sworn statements conveying the information required by 40 C.F.R. Part 264.143(f) annually, on the

15  anniversary of the Effective Date.  In the event that EPA, after a reasonable opportunity for review

16  and comment by DTSC, determines at any time that the financial assurances provided pursuant to

17  this Section are inadequate, Settling Defendant shall, within thirty days of receipt of notice of EPA's

18  determination, obtain and present to EPA for approval one of the other forms of financial assurance

19  listed in Paragraph 46 of this Consent Decree.  Settling Defendant's inability to demonstrate

20  financial ability to complete the Work shall not excuse performance of any activities required under

21  this Consent Decree.

22      48.     If Settling Defendant can show that the estimated cost to complete the remaining

23  Work has diminished below the amount set forth in Paragraph 46 above after entry of this Consent

24  Decree, Settling Defendant may, on any anniversary date of entry of this Consent Decree, or at any

25  other time agreed to by the Parties, reduce the amount of the financial security provided under this

26  Section to the estimated cost of the remaining work to be performed.  Settling Defendant shall

27  submit a proposal for such reduction to EPA, in accordance with the requirements of this Section,

28  and may reduce the amount of the security upon approval by EPA, after a reasonable opportunity

1   for review and comment by DTSC.  In the event of a dispute, Settling Defendant may reduce the

2   amount of the security in accordance with the final administrative or judicial decision resolving the

3   dispute.

4          49.     Settling Defendant may change the form of financial assurance provided under this

5   Section at any time, upon notice to and approval by EPA, after a reasonable opportunity for review

6   and comment by DTSC, provided that the new form of assurance meets the requirements of this

7   Section.  In the event of a dispute, Settling Defendant may change the form of the financial

8   assurance only in accordance with the final administrative or judicial decision resolving the dispute.

9                          XIV.  CERTIFICATION OF COMPLETION

10         50.     Completion of the Remedial Action.

11                 a.     Within ninety days after Settling Defendant concludes that the Remedial

12  Action for the soil remedy, as prescribed by this Consent Decree and related SOW, has been fully

13  performed and the Performance Standards have been attained, including preparing an O&M manual,

14  Settling Defendant shall schedule and conduct a pre-certification inspection to be attended by

15  Settling Defendant, EPA, and DTSC. If, after the pre-certification inspection, the Settling Defendant

16  still believes that the Remedial Action for the soil has been fully performed and the Performance

17  Standards have been attained, it shall submit the Remedial Action Report as described in the SOW

18  requesting certification to EPA for approval, with a copy to DTSC, pursuant to Section XI (EPA

19  Approval of Plans and Other Submissions) within thirty days of the inspection.  In the Remedial

20  Action Report, a registered professional engineer and the Settling Defendant's Project Coordinator

21  shall state that the Remedial Action for the soil has been completed in full satisfaction of the

22  requirements of this Consent Decree.  The Remedial Action Report shall include as-built drawings

23  signed and stamped by a professional engineer.  The Remedial Action Report shall contain the

24  following statement, signed by a responsible corporate official of the Settling Defendant or the

25  Settling Defendant's Project Coordinator:

26         To the best of my knowledge, after thorough investigation, I certify that the
           information contained in or accompanying this submission is true, accurate and
27         complete.  I am aware that there are significant penalties for submitting false
           information, including the possibility of fine and imprisonment for knowing
28         violations.

If, after completion of the pre-certification inspection and receipt and review of the Remedial Action Report, EPA, after reasonable opportunity to review and comment by DTSC, determines that the Remedial Action for the soil or any portion thereof has not been completed in accordance with this Consent Decree or that the Performance Standards have not been achieved, EPA will notify Settling Defendant in writing of the activities that must be undertaken by Settling Defendant pursuant to this Consent Decree to complete the Remedial Action for the soil and achieve the Performance Standards, provided, however, that EPA may only require Settling Defendant to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the soil remedy selected in the ROD," as that term is defined in Paragraph 13.b. EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require the Settling Defendant to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans and Other Submissions). Settling Defendant shall perform all activities described in the notice in accordance with the specifications and schedules established pursuant to this Paragraph, subject to its right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution). Settling Defendant may submit the Work Completion Report pursuant to Paragraph 51(a) concurrently or as part of the Remedial Action Report.

b. If EPA concludes, based on the initial or any subsequent report requesting Certification of Completion and after a reasonable opportunity for review and comment by DTSC, that the Remedial Action for the soil has been performed in accordance with this Consent Decree and that the Performance Standards have been achieved, EPA will so certify in writing to Settling Defendant. This certification shall constitute the Certification of Completion of the Remedial Action for purposes of this Consent Decree, including, but not limited to, Section XXI (Covenants Not to Sue by Plaintiffs). Certification of Completion of the Remedial Action shall not otherwise affect Settling Defendant's obligations under this Consent Decree.

51. Completion of the Work.

a. Within ninety days after Settling Defendant concludes that all phases of the Work (including the remedy being Operational and Functional and finalizing an O & M manual) have been fully performed, Settling Defendant shall schedule and conduct a pre-certification

inspection to be attended by Settling Defendant, EPA, and DTSC.  If, after the pre-certification inspection, the Settling Defendant still believes that the Work has been fully performed, Settling Defendant shall submit the Work Completion Report as described in the SOW, from a registered professional engineer stating that the Work has been completed in full satisfaction of the requirements of this Consent Decree.  The Work Completion Report shall contain the following statement, signed by a responsible corporate official of the Settling Defendant or the Settling Defendant's Project Coordinator:

> To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after review of the Work Completion Report, EPA, after reasonable opportunity to review and comment by DTSC, determines that any portion of the Work has not been completed in accordance with this Consent Decree, EPA will notify Settling Defendant in writing of the activities that must be undertaken by Settling Defendant pursuant to this Consent Decree to complete the Work, provided, however, that EPA may only require Settling Defendant to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy selected in the ROD," as that term is defined in Paragraph 13.b.  EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require the Settling Defendant to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans and Other Submissions).  Settling Defendant shall perform all activities described in the notice in accordance with the specifications and schedules established therein, subject to its right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

       b.      If EPA concludes, based on the initial or any subsequent request for Certification of Completion by Settling Defendant and after a reasonable opportunity for review and comment by DTSC, that the Work has been performed in accordance with this Consent Decree, EPA will so notify the Settling Defendant in writing.

1

## XV. EMERGENCY RESPONSE

2       52.     In the event of any action or occurrence during the performance of the Work which

3   causes or threatens a release of Waste Material from the Site that constitutes an emergency situation

4   or may present an immediate threat to public health or welfare or the environment, Settling

5   Defendant shall, subject to Paragraph 53, immediately take all appropriate action to prevent, abate,

6   or minimize such release or threat of release, and shall immediately notify the EPA's Project

7   Coordinator, or, if the Project Coordinator is unavailable, EPA's Alternate Project Coordinator.  If

8   neither of these persons is available, the Settling Defendant shall notify the EPA Emergency

9   Response Unit, Region IX. Settling Defendant shall also immediately notify the Project Coordinator

10  for DTSC.   Settling Defendant shall take such actions in consultation with EPA's Project

11  Coordinator or other available authorized EPA officer and in accordance with all applicable

12  provisions of the Health and Safety Plans, the Contingency Plans, and any other applicable plans

13  or documents developed pursuant to the SOW.  In the event that Settling Defendant fails to take

14  appropriate response action as required by this Section, and EPA or, as appropriate, DTSC, take such

15  action instead, costs thereby incurred by EPA and DTSC shall be considered Response Costs that

16  Settling Defendant shall pay pursuant to Paragraph 54.d.

17      53.     Nothing in the preceding Paragraph or in this Consent Decree shall be deemed to

18  limit any authority of the United States or DTSC a) to take all appropriate action to protect human

19  health and the environment or to prevent, abate, respond to, or minimize an actual or threatened

20  release of Waste Material on, at, or from the Site, or b) to direct or order such action, or seek an

21  order from the Court, to protect human health and the environment or to prevent, abate, respond to,

22  or minimize an actual or threatened release of Waste Material on, at, or from the Site, subject to

23  Section XXI (Covenants Not to Sue by Plaintiffs).

24

## XVI. PAYMENTS FOR RESPONSE COSTS

25      54.     Payments for Response Costs.

26              a.      Before January 19, 2007, or within thirty days of the Effective Date,

27  whichever is later in time, Settling Defendant shall remit in two payments a total of $1,900,000.00

28  for response costs incurred and to be incurred by the United States and DTSC in connection with

the Site, excluding any response costs that may become payable pursuant to subsection d. of this Paragraph.  A payment in the amount of $1,000,000.00 shall be made to the United States for United States Response Costs, and a payment in the amount of $900,000.00 shall be made to DTSC for DTSC Response Costs.  Payments shall be made as follows:

i)  Payments to the United States shall be made by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account in accordance with current EFT procedures, referencing the USAO File Number, EPA Site/Spill ID Number 091E, and DOJ Case Number 90-11-3-07886.  Payment shall be made in accordance with instructions provided to the Settling Defendant by the Financial Litigation Unit of the United States Attorney's Office for the Eastern District of California.  Any payments received by the Department of Justice after 4:00 p.m. (Eastern Time) will be credited on the next business day.

ii)  Payment to DTSC shall be made by cashiers check payable to Cashier, California Department of Toxic Substances Control, and accompanied by a transmittal letter referencing the McCormick & Baxter Creosoting Company, Project Code No. 100108, which shall be forwarded to:

Cashier, Department of Toxic Substances Control
1001 I Street, 4th Floor
P.O. Box 806
Sacramento, CA  95814-0806

b.        At the time of payment, Settling Defendant shall send notice that payment has been made to the United States, to EPA, to the EPA Regional Financial Management Officer, and to DTSC, in accordance with Section XXVI (Notices and Submissions).

c.        The total amount to be paid by Setting Defendant to the United States pursuant to Subparagraph 54.a shall be deposited in the McCormick & Baxter Superfund Site Special Account within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

d.        In the event that EPA assumes the performance of all or any portions of the Work as EPA determines necessary pursuant to Paragraph 87, or in the event that EPA or DTSC

Page 30 - Consent Decree

decide to undertake emergency response pursuant to Paragraph 52, Settling Defendant shall pay to EPA and DTSC, in addition to the amount specified in Subparagraph 54.a, all United States Response Costs and DTSC Response Costs incurred in connection with the performance of any portion of the Work or obtaining access and/or land/water use restrictions or undertaking emergency response not inconsistent with the National Contingency Plan.  Response costs payable under this subparagraph shall be paid no later than thirty days from the date of demand for payment.  Payment shall be made as provided in Paragraph 54.a(i) and (ii).  At the time of payment, Settling Defendant shall send notice that payment has been made to the United States, to EPA, to the Regional Financial Management Officer, and to DTSC, in accordance with Section XXVI (Notices and Submissions). The total amount to be paid by Setting Defendant to the United States pursuant to this subparagraph shall be deposited in the McCormick & Baxter Superfund Site Special Account within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

55.     In the event that the payments required by Subparagraphs 54.a and 54.d are not made on or before the specified due date, Settling Defendant shall pay Interest on the unpaid balance.  The Interest to be paid under this Paragraph shall begin to accrue on the specified due date for the payment.  Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiffs by virtue of Settling Defendant's failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Section XX of this Consent Decree.

XVII. I<span>NDEMNIFICATION AND</span> I<span>NSURANCE</span>

56.     Settling Defendant's Indemnification of the United States and DTSC.

a.      The United States and DTSC do not assume any liability by entering into this agreement or by virtue of any designation of Settling Defendant as EPA's authorized representatives under Section 104(e) of CERCLA.  Settling Defendant shall indemnify, save and hold harmless the United States, DTSC, and their officials, agents, employees, contractors, subcontractors, or representatives for or from any and all claims or causes of action arising from, or on account of,

negligent or other wrongful acts or omissions of Settling Defendant, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on its behalf or under their control, in carrying out the Work, including, but not limited to, any claims arising from any designation of Settling Defendant as EPA's authorized representatives under Section 104(e) of CERCLA.  Further, the Settling Defendant agrees to pay the United States and DTSC all costs they incur including, but not limited to, attorneys fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States or DTSC based on negligent or other wrongful acts or omissions of Settling Defendant, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree.  Neither the United States nor DTSC shall be held out as a party to any contract entered into by or on behalf of Settling Defendant in carrying out activities pursuant to this Consent Decree.  Neither the Settling Defendant nor any such contractor shall be considered an agent of the United States or DTSC.

b.      The United States and DTSC shall give Settling Defendant notice of any claim for which the United States or DTSC plans to seek indemnification pursuant to Paragraph 56, and shall consult with Settling Defendant prior to settling such claim.

57.     Settling Defendant waives all claims against the United States and the DTSC, for damages or reimbursement or for set-off of any payments made or to be made to the United States or DTSC, arising from or on account of any contract, agreement, or arrangement between the Settling Defendant and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.  In addition, Settling Defendant shall indemnify and hold harmless the United States and the DTSC, with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Defendant and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.

58.     No later than fifteen days before commencing any on-Site Work, Settling Defendant shall secure, and shall maintain until the first anniversary of EPA's Certification of Completion of the Remedial Action pursuant to Subparagraph 50.b of Section XIV (Certification of Completion)

comprehensive general liability insurance with limits of one million dollars, combined single limit, and automobile liability insurance with limits of one million dollars, combined single limit, naming the United States and the DTSC as additional insureds.  In addition, for the duration of this Consent Decree, Settling Defendant shall satisfy, or shall ensure that its contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Settling Defendant in furtherance of this Consent Decree.  Prior to commencement of the Work under this Consent Decree, Settling Defendant shall provide to EPA and DTSC certificates of such insurance and a copy of each insurance policy.  Settling Defendant shall resubmit such certificates and copies of policies each year on the anniversary of the Effective Date.  If Settling Defendant demonstrates by evidence satisfactory to EPA and DTSC that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Settling Defendant need provide only that portion of the insurance described above which is not maintained by the contractor or subcontractor.

## XVIII. FORCE MAJEURE

59.    "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of the Settling Defendant, of any entity controlled by Settling Defendant, or of Settling Defendant's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Settling Defendant's best efforts to fulfill the obligation.  The requirement that the Settling Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (1) as it is occurring and (2) following the potential force majeure event, such that the delay is minimized to the greatest extent possible.  "Force Majeure" does not include financial inability to complete the Work or a failure to attain the Performance Standards.

60.    If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, the Settling Defendant shall notify orally EPA's Project Coordinator or, in his or her absence, EPA's Alternate Project

Coordinator or, in the event both of EPA's designated representatives are unavailable, the Director of the Superfund Division, EPA Region IX, as well as the designated DTSC representative, within twenty-four hours of when Settling Defendant first knew that the event might cause a delay. Within seven (7) days thereafter, Settling Defendant shall provide in writing to EPA and DTSC an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; the Settling Defendant's rationale for attributing such delay to a force majeure event if they intend to assert such a claim; and a statement as to whether, in the opinion of the Settling Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment. The Settling Defendant shall include with any notice all available documentation supporting its claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Settling Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Settling Defendant shall be deemed to know of any circumstance of which Settling Defendant, any entity controlled by Settling Defendant, or Settling Defendant's contractors knew or should have known.

61.    If EPA, after a reasonable opportunity for review and comment by DTSC, agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA, after a reasonable opportunity for review and comment by DTSC, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. If EPA, after a reasonable opportunity for review and comment by DTSC, does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify the Settling Defendant in writing of its decision. If EPA, after a reasonable opportunity for review and comment by DTSC, agrees that the delay is attributable to a force majeure event, EPA will notify the Settling Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

62.     If the Settling Defendant elects to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution), it shall do so no later than fifteen days after receipt of EPA's notice.  In any such proceeding, Settling Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Defendant complied with the requirements of Paragraphs 59 and 60, above. If Settling Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Settling Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

XIX.  DISPUTE RESOLUTION

63.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  However, the procedures set forth in this Section shall not apply to actions by the United States or DTSC to enforce obligations of the Settling Defendant that have not been disputed in accordance with this Section.

64.     Any dispute which arises under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute.  The period for informal negotiations shall not exceed twenty days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute.  The dispute shall be considered to have arisen when one party sends the other parties a written Notice of Dispute.

65.     Statements of Position

a.      In the event that the parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA (or DTSC, in the case of any failure to make the payments required in Paragraph 54.a and 54.d to DTSC) shall be considered binding unless, within seven (7) days after the conclusion of the informal negotiation period, Settling Defendant invokes the formal dispute resolution procedures of this Section by serving on the United States and DTSC a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation

1   relied upon by the Settling Defendant.  The Statement of Position shall specify the Settling

2   Defendant's position as to whether formal dispute resolution should proceed under Paragraph 66 or

3   Paragraph 67.

4          b.     Within thirty (30) days after receipt of Settling Defendant's Statement of

5   Position, EPA (or DTSC, in the case of any failure to make the payments required in Paragraph 54.a

6   and 54.d to DTSC) will serve on Settling Defendant its Statement of Position, including, but not

7   limited to, any factual data, analysis, or opinion supporting that position and all supporting

8   documentation relied upon by EPA or DTSC.  EPA's (or DTSC's) Statement of Position shall

9   include a statement as to whether formal dispute resolution should proceed under Paragraph 66 or

10  67.  Within seven (7) days after receipt of EPA's (or DTSC's) Statement of Position, Settling

11  Defendant may submit a Reply.

12         c.     If there is disagreement between EPA and the Settling Defendant as to

13  whether dispute resolution should proceed under Paragraph 66 or 67, the parties to the dispute shall

14  follow the procedures set forth in the paragraph determined by EPA to be applicable.  However, if

15  the Settling Defendant ultimately appeals to the Court to resolve the dispute, the Court shall

16  determine which paragraph is applicable in accordance with the standards of applicability set forth

17  in Paragraphs 66 and 67.

18         66.    Formal dispute resolution for disputes pertaining to the selection or adequacy of any

19  response action and all other disputes that are accorded review on the administrative record under

20  applicable principles of administrative law shall be conducted pursuant to the procedures set forth

21  in this Paragraph.  For purposes of this Paragraph, the adequacy of any response action includes,

22  without limitation: (1) the adequacy or appropriateness of plans, procedures to implement plans, or

23  any other items requiring approval by EPA under this Consent Decree; and (2) the adequacy of the

24  performance of response actions taken pursuant to this Consent Decree.  Nothing in this Consent

25  Decree shall be construed to allow any dispute by Settling Defendant regarding the validity of the

26  ROD's provisions.

27         a.     An administrative record of the dispute shall be maintained by EPA and shall

28  contain all statements of position, including supporting documentation, submitted pursuant to this

1   Section.  Where appropriate, EPA may allow submission of supplemental statements of position by

2   the parties to the dispute.

3           b.      The Director of the Superfund Division, EPA Region IX, will issue a final

4   administrative decision resolving the dispute based on the administrative record described in

5   Paragraph 66.a.  This decision shall be binding upon the Settling Defendant, subject only to the right

6   to seek judicial review pursuant to Paragraph 66.c and d.

7           c.      Any administrative decision made by EPA pursuant to Paragraph 66.b. shall

8   be reviewable by this Court, provided that a motion for judicial review of the decision is filed by the

9   Settling Defendant with the Court and served on all Parties within ten days of receipt of EPA's

10  decision.  The motion shall include a description of the matter in dispute, the efforts made by the

11  parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be

12  resolved to ensure orderly implementation of this Consent Decree.  The United States may file a

13  response to Settling Defendant's motion.

14          d.      In proceedings on any dispute governed by this Paragraph, Settling Defendant

15  shall have the burden of demonstrating that the decision of the Superfund Division Director is

16  arbitrary and capricious or otherwise not in accordance with law.  Judicial review of EPA's decision

17  shall be on the administrative record compiled pursuant to Paragraph 66.a.

18      67.     Formal dispute resolution for disputes that neither pertain to the selection or adequacy

19  of any response action nor are otherwise accorded review on the administrative record under

20  applicable principles of administrative law, shall be governed by this Paragraph.

21          a.      Following receipt of Settling Defendant's Statement of Position submitted

22  pursuant to Paragraph 65, the Director of the Superfund Division, EPA Region IX, (or, in the case

23  of any failure to make the payments required in Paragraph 54.a and 54.d to DTSC, the director of

24  DTSC or his/her designee) will issue a final decision resolving the dispute.  The Superfund Division

25  Director's decision (or the decision of the director of DTSC or his/her designee) shall be binding on

26  the Settling Defendant unless, within ten days of receipt of the decision, the Settling Defendant files

27  with the Court and serves on the parties a motion for judicial review of the decision setting forth the

28  matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule,

1    if any, within which the dispute must be resolved to ensure orderly implementation of the Consent

2    Decree.  The United States (or DTSC) may file a response to Settling Defendant's motion.

3                b.       Notwithstanding any other provision of this Consent Decree, judicial review

4    of any dispute governed by this Paragraph shall be governed by applicable principles of law.

5            68.    The invocation of formal dispute resolution procedures under this Section shall not

6    extend, postpone or affect in any way any obligation of the Settling Defendant under this Consent

7    Decree, not directly in dispute, unless EPA (or DTSC) or the Court agrees otherwise.  Stipulated

8    penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed

9    pending resolution of the dispute as provided in Paragraph 78.  Notwithstanding the stay of payment,

10   stipulated penalties shall accrue from the first day of noncompliance with any applicable provision

11   of this Consent Decree.  In the event that the Settling Defendant does not prevail on the disputed

12   issue, stipulated penalties shall be assessed and paid as provided in Section XX (Stipulated

13   Penalties).

14                          XX.  STIPULATED PENALTIES

15           69.    Settling Defendant shall be liable for stipulated penalties in the amounts set forth in

16   Paragraphs 70 and 71 to the United States (and to DTSC, in the case of any failure to make the

17   payments required in Paragraph 54.a and 54.d to DTSC) for failure to comply with the requirements

18   of this Consent Decree specified below, unless excused under Section XVIII (Force Majeure).

19   "Compliance" by Settling Defendant shall include completion of the activities under this Consent

20   Decree or any work plan or other plan approved under this Consent Decree identified below in

21   accordance with all applicable requirements of law, this Consent Decree, the SOW, and any plans

22   or other documents approved by EPA pursuant to this Consent Decree and within the specified time

23   schedules established by and approved under this Consent Decree.

24           70.    Stipulated Penalty Amounts - Work.

25                  a.       The following stipulated penalties shall accrue per violation per day for any

26   noncompliance identified in Subparagraph 70.b:

27

28

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $2,000 | 1st through 14th day |
| $5,000 | 15th through 30th day |
| $10,000 | 31st day and beyond |

b.      The above penalties shall apply to any failure of Settling Defendant to:

(1)      make the payments required in Paragraph 54.a and 54.d;

(2)      record the land use covenant as specified in Paragraph 24;

(3)      complete the work as set out in this Decree and the SOW, including but not limited to submission of all deliverables in accordance with the schedules herein and in the SOW;

(4)      correct deficiencies and resubmit plans as specified in Section XI;

(5)      obtain insurance as specified in Paragraph 58; or

(6)      obtain financial assurance as specified in Section XIII.

71.      Stipulated Penalty Amounts - Reports.

The following stipulated penalties shall accrue per violation per day for failure to submit timely or adequate reports or other written documents pursuant to Paragraphs 11 and 12:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,500 | 1st through 14th day |
| $3,000 | 15th through 30th day |
| $5,000 | 31st day and beyond |

72.      In the event that EPA assumes performance of a portion or all of the Work pursuant to Paragraph 87 of Section XXI (Covenants Not to Sue by Plaintiffs), Settling Defendant shall be liable for a stipulated penalty in the amount of $2,000,000, to be split between EPA and DTSC.

73.      All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs, and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity.  However, stipulated penalties shall not accrue: (1) with respect to a deficient submission under Section XI (EPA Approval of Plans and Other Submissions), during the period, if any, beginning on the thirty-first day after EPA's receipt of such

submission until the date that EPA notifies Settling Defendant of any deficiency; (2) with respect to a decision by the Director of the Superfund Division, EPA Region IX, under Paragraph 66.b or 67.a of Section XIX (Dispute Resolution), or the director of DTSC or his/her designee under Paragraph 67.a during the period, if any, beginning on the twenty-first day after the date that Settling Defendants reply to EPA's (or DTSC's) Statement of Position is received until the date that the respective Director issues a final decision regarding such dispute; or (3) with respect to judicial review by this Court of any dispute under Section XIX (Dispute Resolution), during the period, if any, beginning on the thirty-first day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute.  Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

74.     Following EPA's determination (or in the case of any failure to make the payments required in Paragraph 54.a and 54.d to DTSC, DTSC's determination) that Settling Defendant has failed to comply with a requirement of this Consent Decree, EPA or DTSC may give Settling Defendant written notification of the same and describe the noncompliance.  EPA (or in the case of any failure to make the payments required in Paragraph 54.a and 54.d to DTSC, DTSC) may send the Settling Defendant a written demand for the payment of the penalties.  However, penalties shall accrue as provided in the preceding Paragraph regardless of whether EPA or DTSC has notified the Settling Defendant of a violation.

75.     Except as provided in Paragraph 76, all penalties accruing under this Section shall be due and payable to the United States within thirty days of the Settling Defendant' receipt from EPA of a demand for payment of the penalties, unless Settling Defendant invokes the Dispute Resolution procedures under Section XIX (Dispute Resolution).  All payments to the United States under this Section shall be paid by certified or cashier's check(s) made payable to "EPA Hazardous Substances Superfund;" shall be mailed to EPA Superfund, Region IX, Attn: Superfund Accounting, P.O. Box 371099M, Pittsburgh, PA 15251; shall indicate that the payment is for stipulated penalties; and shall reference the EPA Region and Site/Spill ID #091E, the DOJ Case Number 90-11-3-07886, and the name and address of the party making payment.  Copies of check(s) paid pursuant to this

1    Section, and any accompanying transmittal letter(s), shall be sent to the United States as provided

2    in Section XXVI (Notices and Submissions), including to EPA's Financial Management Officer.

3          76.    In the case of any failure to make the payments required in Paragraph 54.a and 54.d

4    to DTSC, penalties thereby accruing under Subparagraph 70.b(1) shall be due and payable to DTSC

5    within thirty days of the Settling Defendant' receipt from DTSC of a demand for payment of the

6    penalties, unless Settling Defendant invokes the Dispute Resolution procedures under Section XIX

7    (Dispute Resolution).  Payment to DTSC shall be made by cashiers check payable to Cashier,

8    California Department of Toxic Substances Control, and accompanied by a transmittal letter

9    referencing the McCormick & Baxter Creosoting Company, Project Code No. 100108, which shall

10   be forwarded to: Cashier, Department of Toxic Substances Control, 1001 I Street, 4th Floor, P.O.

11   Box 806, Sacramento, CA  95814-0806.

12         77.    The payment of penalties shall not alter in any way Settling Defendant's obligation

13   to complete the performance of the Work required under this Consent Decree.

14         78.    Penalties shall continue to accrue as provided in Paragraph 73 during any dispute

15   resolution period, but need not be paid until the following:

16              a.    If the dispute is resolved by agreement or by a decision of EPA (or DTSC)

17   that is not appealed to this Court, accrued penalties determined to be owing shall be paid to EPA (or

18   DTSC) within fifteen days of the agreement or the receipt of EPA's (or DTSC's) decision or order;

19              b.    If the dispute is appealed to this Court and the United States (or DTSC)

20   prevails in whole or in part, Settling Defendant shall pay all accrued penalties determined by the

21   Court to be owed to EPA (or DTSC) within sixty days of receipt of the Court's decision or order,

22   except as provided in Subparagraph c below;

23              c.    If the District Court's decision is appealed by any Party, Settling Defendant

24   shall pay all accrued penalties determined by the District Court to be owing to the United States (or

25   DTSC) into an interest-bearing escrow account within sixty days of receipt of the Court's decision

26   or order.  Penalties shall be paid into this account as they continue to accrue, at least every sixty

27   days.  Within fifteen days of receipt of the final appellate court decision, the escrow agent shall pay

28   the balance of the account to EPA (or DTSC) or to Settling Defendant to the extent that they prevail.

79.     If Settling Defendant fails to pay stipulated penalties when due, the United States or DTSC may institute proceedings to collect the penalties, as well as interest. Settling Defendant shall pay Interest on the unpaid balance, which shall begin to accrue on the date of demand made pursuant to Paragraph 75.

80.     Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States or DTSC to seek any other remedies or sanctions available by virtue of Settling Defendant's violation of this Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(l) of CERCLA, provided, however, that the United States and DTSC shall not seek civil penalties pursuant to Section 122(l) of CERCLA for any violation for which a stipulated penalty is provided herein, except in the case of a willful violation of the Consent Decree.

81.     Notwithstanding any other provision of this Section, the United States or DTSC may, in their unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Consent Decree.

XXI. <span>Covenants Not to Sue by Plaintiffs</span>

82.     <u>United States' Covenant Not to Sue.</u>  In consideration of the actions that will be performed and the payments that will be made by the Settling Defendant under the terms of the Consent Decree, and except as specifically provided in Paragraphs 83, 84, and 86 of this Section, the United States covenants not to sue or to take administrative action against Settling Defendant pursuant to Sections 106 and 107(a) of CERCLA relating to the Site.  Except with respect to future liability, this covenant not to sue shall take effect upon the receipt by EPA of the payments required by Paragraph 54.a of Section XVI (Payments for Response Costs).  With respect to future liability, this covenant not to sue shall take effect upon Certification of Completion of Remedial Action for the soil remedy by EPA pursuant to Paragraph 50.b of Section XIV (Certification of Completion). This covenant not to sue is conditioned upon the satisfactory performance by Settling Defendant of its obligations under this Consent Decree.  This covenant not to sue extends only to the Settling Defendant and does not extend to any other person.

83.   <u>United States' Pre-certification Reservations.</u>  Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel Settling Defendant to perform further response actions relating to the soil remedy at the Site, or to reimburse the United States for additional costs of response if, prior to Certification of Completion of the Remedial Action,

(a)   soil conditions at the Site, previously unknown to EPA, are discovered, or

(b)   information, previously unknown to EPA, is received, in whole or in part, and EPA determines that these previously unknown conditions or information together with any other relevant information indicates that the Remedial Action relating to the soil work at the Site is not protective of human health or the environment.

84.   <u>United States' Post-certification Reservations.</u>  Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel Settling Defendant to reimburse the United States for additional costs of response if, subsequent to Certification of Completion of the Remedial Action:

(a)   soil conditions at the Site, previously unknown to EPA, are discovered, or

(b)   information, previously unknown to EPA, is received, in whole or in part, and EPA determines that these previously unknown conditions or this information together with other relevant information indicate that the Remedial Action relating to the soil work at the Site is not protective of human health or the environment.

85.   For purposes of Paragraphs 83 and 84, the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date of entry of this Consent Decree or set forth in the Record of Decision, the administrative record supporting the Record of Decision, the post-ROD administrative record, or in any information received by EPA prior to entry of this Consent Decree.

86.   <u>United States' general reservations of rights</u>.  The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendant with respect to all

matters not expressly included within the United States' covenant not to sue as set forth in Paragraph 82. Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against Settling Defendant with respect to:

a.      claims based on a failure by Settling Defendant to meet a requirement of this Consent Decree;

b.      liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Site;

c.      liability based upon the Settling Defendant's ownership or operation of the Site, or upon the Settling Defendant's transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, other than as provided in the ROD, the Work, or otherwise ordered by EPA, after signature of this Consent Decree by the Settling Defendant;

d.      liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

e.      criminal liability;

f.      liability for violations of federal or state law which occur during or after implementation of the Remedial Action; and

g.      liability, prior to Certification of Completion of the Remedial Action, for additional response actions that EPA determines are necessary to achieve Performance Standards, but that cannot be required pursuant to Paragraph 13 (Modification of the SOW or Related Work Plans).

87.      <u>Work Takeover.</u>  In the event EPA determines that Settling Defendant has ceased implementation of any portion of the Work, is seriously or repeatedly deficient or late in its performance of the Work, or is implementing the Work in a manner which may cause an endangerment to human health or the environment, EPA may assume the performance of all or any portions of the Work as EPA determines necessary. Settling Defendant may invoke the procedures set forth in Section XIX (Dispute Resolution), Paragraph 66, to dispute EPA's determination that takeover of the Work is warranted under this Paragraph. Costs incurred by the United States in

1    performing the Work pursuant to this Paragraph, and any response costs incurred by DTSC in

2    connection with such a Work takeover that would not otherwise have been incurred by DTSC, shall

3    be considered Response Costs that Settling Defendant shall pay pursuant to Paragraph 54.d.

4    　　　　88.    DTSC's Covenant Not to Sue.  In consideration of the actions that will be performed

5    and the payments that will be made by the Settling Defendant under the terms of the Consent

6    Decree, and except as otherwise provided in this Consent Decree, DTSC covenants not to sue or to

7    take administrative action against Settling Defendant pursuant to Section 107(a) of CERCLA, 42

8    U.S.C. § 9607, or California Health & Safety Code Section 25300 et seq., relating to the Site.

9    Except with respect to future liability, this covenant not to sue shall take effect upon the receipt by

10   DTSC of the payments required by Paragraph 54.a of Section XVI (Payments for Response Costs).

11   With respect to future liability, this covenant not to sue shall take effect upon Certification of

12   Completion of Remedial Action for the soil remedy by EPA pursuant to Paragraph 50.b of Section

13   XIV (Certificate of Completion).  This covenant not to sue is conditioned upon the satisfactory

14   performance by the Settling Defendant of its obligations under this Consent Decree.  This covenant

15   not to sue extends only to the Settling Defendant and does not extend to any other person.

16   　　　　89.    DTSC's General Reservations of Rights.  DTSC reserves, and this Consent Decree

17   is without prejudice to, all rights against Settling Defendant with respect to all matters not expressly

18   included within DTSC's covenant not to sue as set forth in Paragraph 88.  Notwithstanding any other

19   provision of this Consent Decree, DTSC reserves all rights against the Settling Defendant with

20   respect to the following:

21   　　　　　　a.    claims based on a failure by the Settling Defendant to meet a requirement of

22   this Consent Decree;

23   　　　　　　b.    liability arising from the past, present, or future disposal, release, or threat of

24   release of Waste Material outside of the Site;

25   　　　　　　c.    liability based upon the Settling Defendants' ownership or operations of the

26   Site, or upon the Settling Defendants'  transportation, treatment, storage, or disposal, or the

27   arrangement for the transportation, treatment, storage, or disposal of Waste Material at or in

28

connection with the Site, other than as provided in the ROD, the Work, or otherwise ordered by

EPA, after signature of this Consent Decree by the Settling Defendant;

        d.     liability for damages for injury to, destruction of, or loss of natural resources,

and for the costs of any natural resource damage assessments;

        e.     criminal liability;

        f.     liability for violations of federal or state law which occur during or after

implementation of the Remedial Action; and

        g.     liability, prior to Certification of Completion of the Remedial Action, for

additional response actions that EPA determines are necessary to achieve Performance Standards,

but that cannot be required pursuant to Paragraph 13 (Modification of the SOW or Related Work

Plans).

        90.     In the event that the United States institutes proceedings or issues an administrative

order against the Settling Defendants pursuant to the United States' Pre-Certification Reservations

or the United States' Post-Certification Reservations, DTSC reserves, and this Consent Decree is

without prejudice to, the right to institute proceedings in this action or in a new action or to issue

an administrative order seeking to compel the Settling Defendants to reimburse DTSC for additional

costs of response, notwithstanding any other provision of this Consent Decree.

        91.     Notwithstanding any other provision of this Consent Decree, the United States and

DTSC retain all authority and reserve all rights to take any and all response actions authorized by

law.

### XXII.  COVENANTS BY SETTLING DEFENDANT

        92.     <u>Covenant Not to Sue</u>.  Subject to the reservations in Paragraph 93, Settling Defendant

hereby covenants not to sue and agrees not to assert any claims or causes of action against the

United States or DTSC with respect to the Site or this Consent Decree, including, but not limited

to:

        a.     any direct or indirect claim for reimbursement from the Hazardous Substance

Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA

Sections 106(b)(2), 107, 111, 112, 113 or any other provision of law;

b.      any claims against the United States or DTSC , including any department, agency or instrumentality of the United States under CERCLA Sections 107 or 113 related to the Site;

c.      any claims arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the California Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law, or

d.      any claims against DTSC for reimbursement from any California State fund, including but not limited to the California Hazardous Substances Account or the California Hazardous Substance Cleanup Fund.

Except as provided in Paragraph 95 (Waiver of Claims Against De Micromis Parties) and Paragraph 100, these covenants not to sue shall not apply in the event that the United States or DTSC brings a cause of action or issues an order pursuant to the reservations set forth in Paragraphs 83, 84, or 86.b, .c, .d or .g, but only to the extent that Settling Defendant's claims arise from the same response action, response costs, or damages that the United States or DTSC is seeking pursuant to the applicable reservation.

93.      The Settling Defendant reserves, and this Consent Decree is without prejudice to, claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, or DTSC, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States or DTSC while acting within the scope of their office or employment under circumstances where the United States or DTSC, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.  However, any such claim shall not include a claim for any damages caused, in whole or in part, by the act or omission of any person, including any contractor, who is not a federal employee as that term is defined in 28 U.S.C. § 2671, or a DTSC employee; nor shall any such claim include a claim based on EPA's selection of response actions, or the oversight or approval of the Settling Defendant's plans or activities.  The foregoing applies

1    only to claims which are brought pursuant to any statute other than CERCLA and for which the

2    waiver of sovereign immunity is found in a statute other than CERCLA.

3        94.    Nothing in this Consent Decree shall be deemed to constitute preauthorization of a

4    claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

5        95.    <u>Waiver of Claims Against De Micromis Parties</u>

6        a.    Settling Defendant agrees not to assert any claims and to waive all claims or

7    causes of action that it may have for all matters relating to the Site, including for contribution,

8    against any person where the person's liability to Settling Defendant with respect to the Site is based

9    solely on having arranged for disposal or treatment, or for transport for disposal or treatment, of

10   hazardous substances at the Site, or having accepted for transport for disposal or treatment of

11   hazardous substances at the Site, if the materials contributed by such person to the Site containing

12   hazardous substances did not exceed the greater of (i) 0.002% of the total volume of waste at the

13   Site, or (ii) 110 gallons of liquid materials or 200 pounds of solid materials.

14       b.    This waiver shall not apply to any claim or cause of action against any person

15   meeting the above criteria if EPA has determined that the materials contributed to the Site by such

16   person contributed or could contribute significantly to the costs of response at the Site. This waiver

17   also shall not apply with respect to any defense, claim, or cause of action that a Settling Defendant

18   may have against any person if such person asserts a claim or cause of action relating to the Site

19   against such Settling Defendant.

20                    XXIII.  EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION

21       96.    Except as provided in Paragraph 95 (Waiver of Claims Against De Micromis Parties),

22   nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action

23   to, any person not a Party to this Consent Decree.  The preceding sentence shall not be construed

24   to waive or nullify any rights that any person not a signatory to this decree may have under

25   applicable law.  Except as provided in Paragraph 95 (Waiver of Claims Against De Micromis

26   Parties), each of the Parties expressly reserves any and all rights (including, but not limited to, any

27   right to contribution), defenses, claims, demands, and causes of action which each Party may have

28

1   with respect to any matter, transaction, or occurrence relating in any way to the Site against any

2   person not a Party hereto.

3          97.   The Parties agree, and by entering this Consent Decree this Court finds, that the

4   Settling Defendant is entitled, as of the Effective Date, to protection from contribution actions or

5   claims as provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2), for matters addressed

6   in this Consent Decree.  "Matters Addressed" in this Consent Decree shall mean all response actions

7   taken or to be taken, and all response costs incurred or to be incurred by the United States, DTSC,

8   or any other person with respect to the Site.  The "Matters Addressed" in this Consent Decree do

9   not include those response costs or those response actions as to which the United States or DTSC

10  have reserved their respective rights under this Consent Decree (except for claims for failure to

11  comply with this Decree), in the event the United States or DTSC assert rights against the Settling

12  Defendant coming within the scope of such reservations.

13         98.   The Settling Defendant agrees that with respect to any suit or claim for contribution

14  brought by it for matters related to this Consent Decree it will notify the United States and DTSC

15  in writing no later than sixty days prior to the initiation of such suit or claim.

16         99.   The Settling Defendant also agrees that with respect to any suit or claim for

17  contribution brought against it for matters related to this Consent Decree it will notify in writing the

18  United States and DTSC within ten days of service of the complaint on it.  In addition, Settling

19  Defendant shall notify the United States and DTSC within ten days of service or receipt of any

20  Motion for Summary Judgment and within ten days of receipt of any order from a court setting a

21  case for trial.

22         100.   In any subsequent administrative or judicial proceeding initiated by the United States

23  or DTSC for injunctive relief, recovery of response costs, or other appropriate relief relating to the

24  Site, Settling Defendant shall not assert, and may not maintain, any defense or claim based upon the

25  principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other

26  defenses based upon any contention that the claims raised by the United States or DTSC in the

27  subsequent proceeding were or should have been brought in the instant case; provided, however, that

28

Page 49 - Consent Decree

1    nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section

2    XXI (Covenants Not to Sue by Plaintiffs).

3                            XXIV.  ACCESS TO INFORMATION

4            101.    Settling Defendant shall provide to EPA and DTSC, upon request, copies of all

5    documents and information within its possession or control or that of its contractors or agents

6    relating to activities at the Site or to the implementation of this Consent Decree, including, but not

7    limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports,

8    sample traffic routing, correspondence, or other documents or information related to the Work.

9    Settling Defendant shall also make available to EPA and DTSC, for purposes of investigation,

10   information gathering, or testimony, their employees, agents, or representatives with knowledge of

11   relevant facts concerning the performance of the Work.

12           102.    Business Confidential and Privileged Documents.

13                   a.      Settling Defendant may assert business confidentiality claims covering part

14   or all of the documents or information submitted to Plaintiffs under this Consent Decree to the extent

15   permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and

16   40 C.F.R. § 2.203(b).  Documents or information determined to be confidential by EPA will be

17   afforded the protection specified in 40 C.F.R. Part 2, Subpart B.  If no claim of confidentiality

18   accompanies documents or information when they are submitted to EPA and DTSC, or if EPA has

19   notified Settling Defendant that the documents or information are not confidential under the

20   standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given

21   access to such documents or information without further notice to Settling Defendant.

22                   b.      The Settling Defendant may assert that certain documents, records and other

23   information are privileged under the attorney-client privilege or any other privilege recognized by

24   federal law.  If the Settling Defendant asserts such a privilege in lieu of providing documents, it shall

25   provide the Plaintiffs with the following:  (1) the title of the document, record, or information; (2)

26   the date of the document, record, or information; (3) the name and title of the author of the

27   document, record, or information; (4) the name and title of each addressee and recipient; (5) a

28   description of the contents of the document, record, or information: and (6) the privilege asserted

                            Page 50 - Consent Decree

1   by Settling Defendant.  However, no documents, reports or other information created or generated

2   pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are

3   privileged.

4         103.    No claim of confidentiality shall be made with respect to any data, including, but not

5   limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering

6   data, or any other documents or information evidencing conditions at or around the Site.

7   XXV. RETENTION OF RECORDS

8         104.    Until 10 years after the Settling Defendant's receipt of EPA's notification pursuant

9   to Paragraph 51.b of Section XIV (Certification of Completion of the Work), Settling Defendant

10   shall preserve and retain all non-identical copies of records and documents (including records or

11   documents in electronic form) now in its possession or control or which come into its possession or

12   control that relate in any manner to its liability under CERCLA with respect to the Site, provided,

13   however, that Settling Defendant must retain, in addition, all documents and records that relate to

14   the liability of any other person under CERCLA with respect to the Site.  Settling Defendant must

15   also retain, and instruct its contractors and agents to preserve, for the same period of time specified

16   above all non-identical copies of the last draft or final version of any documents or records

17   (including documents or records in electronic form) now in its possession or control or which come

18   into its possession or control that relate in any manner to the performance of the Work, provided,

19   however, that Settling Defendant (and its contractors and agents) must retain, in addition, copies of

20   all data generated during the performance of the Work and not contained in the aforementioned

21   documents required to be retained.  Each of the above record retention requirements shall apply

22   regardless of any corporate retention policy to the contrary.  Notwithstanding this Paragraph,

23   Settling Defendant is currently in possession of McCormick & Baxter business records that, by

24   agreement with Charlie McCormick, Settling Defendant may return or destroy after 60 days notice

25   to Charlie McCormick, but by this Consent Decree Settling Defendant agrees to maintain these

26   documents until the issuance of the Certificate of Completion, after which time Settling Defendant

27   shall give 90 days written notice to the United States before returning or destroying those documents

28   pursuant to its agreement with Charlie McCormick.

105.     At the conclusion of this document retention period, Settling Defendant shall notify the United States and DTSC at least ninety days prior to the destruction of any such records or documents, and, upon request by the United States or DTSC, Settling Defendant shall deliver any such records or documents to EPA or DTSC.  The Settling Defendant may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If the Settling Defendant asserts such a privilege, it shall provide the Plaintiffs with the following:  (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Settling Defendant.  However, no documents, reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

106.     Settling Defendant hereby certifies individually that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed or otherwise disposed of any records, documents or other information (other than identical copies) relating to its potential liability regarding the Site since notification of potential liability by the United States or DTSC or the filing of suit against it regarding the Site and that it has fully complied with any and all EPA requests for information pursuant to Section 104(e) and 122(e) of CERCLA, 42 U.S.C. 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. 6927.

## XXVI. NOTICES AND SUBMISSIONS

107.     Whenever, under the terms of this Consent Decree, written notice is required to be given or a report or other document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing.  All notices and submissions shall be considered effective upon receipt, unless otherwise provided.  Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, DTSC, and the Settling Defendant, respectively.

1    <u>As to the United States</u>:

2        <u>DOJ</u>:                    Chief, Environmental Enforcement Section
                                    Environment and Natural Resources Division
3                                   U.S. Department of Justice
                                    P.O. Box 7611
4                                   Washington, D.C.  20044-7611
                                    Re: DJ # 90-11-3-07886
5
         <u>EPA</u>:                    Director, Superfund Division
6                                   United States Environmental Protection Agency
                                    Region IX
7                                   75 Hawthorne Street
                                    San Francisco, CA 94105
8
                                    Marie Lacey
9                                   United States Environmental Protection Agency
                                    Region IX (SFD-7)
10                                  75 Hawthorne Street
                                    San Francisco, CA 94105
11                                  Tel: (415) 972-3163
                                    E-mail: lacey.marie@epa.gov
12
                                    David Wood
13                                  United States Environmental Protection Agency
                                    Region IX (PMD-6)
14                                  75 Hawthorne Street
                                    San Francisco, CA 94105
15   <u>As to DTSC</u>:               Richard B. Hume, Chief
16                                  National Priorities List Unit
                                    Northern California - Central Cleanup Operations Branch
17                                  Department of Toxic Substances Control
                                    8800 Cal Center Drive
18                                  Sacramento, CA 95826-3200
                                    Tel:  (916) 255-3690
19                                  Fax:  (916) 255-3696
                                    E-mail: rhume@dtsc.ca.gov
20
     <u>As to the Settling Defendant</u>:  Union Pacific Railroad Company
21                                  c/o James Levy, Project Coordinator
                                    9451 Atkinson Street, Suite 100
22                                  Roseville, CA 95747-9711
                                    Tel: (916) 789-6229
23                                  Fax: (916) 789-6227
                                    E-mail: jalevy@up.com
24
                                    Robert C. Bylsma, Esq.
25                                  Regional Environmental Counsel
                                    Union Pacific Railroad Company
26                                  10031 Foothills Boulevard, Suite 200
                                    Roseville, CA 95747-7101
27                                  Tel: (916) 789-6229
                                    Fax: (916) 789-6227
28                                  E-mail:  rcbylsma@up.com

                            Page 53 - Consent Decree

XXVII. Effective Date

108.    The effective date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court.

XXVIII. Retention of Jurisdiction

109.    This Court retains jurisdiction over both the subject matter of this Consent Decree and the Settling Defendant for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XIX (Dispute Resolution) hereof.

XXIX. Appendices

110.    The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the ROD.

"Appendix B" is the SOW.

"Appendix C" is the description and/or map of the Site.

"Appendix D" is the land use covenant in substantially the form to be executed by the Parties and recorded by Settling Defendant pursuant to Section IX.

XXX. Community Relations

Settling Defendant shall propose to EPA and DTSC its participation in the community relations plan regarding the soil remedy to be developed by EPA.  EPA will determine the appropriate role for the Settling Defendant under the Plan.  Settling Defendant shall also cooperate with EPA and DTSC in providing information regarding the Work to the public.  As requested by EPA or DTSC, Settling Defendant shall participate in the preparation of such information for dissemination to the public and in public meetings which may be held or sponsored by EPA or DTSC to explain activities at or relating to the Site.

1

XXXI. MODIFICATION

2     111.    Schedules specified in this Consent Decree for completion of the Work may be

3 modified by agreement of EPA and the Settling Defendant, after a reasonable opportunity for review

4 and comment by DTSC.  All such modifications shall be made in writing.

5     112.    Except as provided in Paragraph 13 (Modification of the SOW or Related Work

6 Plans), no material modifications shall be made to the SOW without written notification to and

7 written approval of the United States, Settling Defendant, and the Court, if such modifications

8 fundamentally alter the basic features of the selected remedy within the meaning of 40 C.F.R.

9 §300.435(c)(2)(B)(ii).  Prior to providing its approval to any modification, the United States will

10 provide DTSC with a reasonable opportunity to review and comment on the proposed modification.

11 Modifications to the SOW that do not materially alter that document, or material modifications to

12 the SOW that do not fundamentally alter the basic features of the selected remedy within the

13 meaning of 40 C.F.R.§ 300.435(c)(2)(B)(ii), may be made by written agreement between EPA, after

14 providing DTSC with a reasonable opportunity to review and comment on the proposed

15 modification, and the Settling Defendant.

16     113.    Nothing in this Decree shall be deemed to alter the Court's power to enforce,

17 supervise or approve modifications to this Consent Decree.

18

XXXII. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

19     114.    This Consent Decree shall be lodged with the Court for a period of not less than thirty

20 (30) days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42

21 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7.  The United States and DTSC reserve the right to

22 withdraw or withhold their consent if the comments regarding the Consent Decree disclose facts or

23 considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate.

24 Settling Defendant consents to the entry of this Consent Decree.

25     115.    If for any reason the Court should decline to approve this Consent Decree in the form

26 presented, this agreement is voidable at the sole discretion of any Party and the terms of the

27 agreement may not be used as evidence in any litigation between the Parties.

28

## XXXIII. SIGNATORIES/SERVICE

116.    Each undersigned representative of the Settling Defendant, the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice, and DTSC, certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

117.    Settling Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States or DTSC has notified the Settling Defendant in writing that they no longer support entry of the Consent Decree.

118.    Settling Defendant shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service of process by mail on behalf of Settling Defendant with respect to all matters arising under or relating to this Consent Decree. Settling Defendant hereby agrees to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons.  The Parties agree that Settling Defendant need not file an answer to the complaint in this action unless or until the court expressly declines to enter this Consent Decree.

## XXXIV. FINAL JUDGMENT

126.    This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Consent Decree.  The Parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.

127.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States, DTSC and the Settling Defendant.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

///

///

1    It is so Ordered this 9th day of March, 2007.

2

3

4                                              _____
                                               FRANK C. DAMRELL, JR.
5                                              UNITED STATES DISTRICT JUDGE

6    THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v.
     Union Pacific Railroad Company, relating to the McCormick & Baxter Superfund Site.
7

8                                                   **FOR THE UNITED STATES OF AMERICA**

9

10
     12/5/06                                   /s/ Sue Ellen Wooldridge
11   Date                                      Sue Ellen Wooldridge
                                               Assistant Attorney General
12                                             Environment and Natural Resources Division
                                               U.S. Department of Justice
13                                             Washington, D.C.  20530

14

15   12/8/06                                   /s/ Steven A. Keller
     Date                                      Steven A. Keller
16                                             Environmental Enforcement Section
                                               Environment and Natural Resources Division
17                                             U.S. Department of Justice
                                               P.O. Box 7611
18                                             Washington, D.C.  20044-7611

19   THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v.
     Union Pacific Railroad Company, relating to the McCormick & Baxter Superfund Site.
20
     9/28/06                                   /s/ Keith Takata
21   Date                                      Keith Takata (original signature retained by
                                               attorney Steven A. Keller)
22                                             Director, Superfund Division
                                               U.S. Environmental Protection Agency
23                                             75 Hawthorne Street
                                               San Francisco, CA 94105
24

25   9/28/06                                   /s/ J. Andrew Helmlinger
     Date                                      J. Andrew Helmlinger
26                                             Assistant Regional Counsel
                                               U.S. Environmental Protection Agency
27                                             Region IX
                                               75 Hawthorne Street
28                                             San Francisco, CA 94105

                              Page 57 - Consent Decree

1

2

3

4 THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Union Pacific Railroad Company, relating to the McCormick & Baxter Superfund Site.

5                                                    **FOR THE CALIFORNIA DEPARTMENT**
                                                      **OF TOXIC SUBSTANCES CONTROL**
6

7

8 11/8/06                                        /s/ James L. Tjosvold
  Date                                           James L. Tjosvold, P.E. (original signature
9                                                retained by attorney Steven A. Keller)
                                                 Chief, Northern California Central
10                                                   Cleanup Operations Branch
                                                 California Department of Toxic Substances
11                                                   Control
                                                 8800 Cal Center Drive
12                                               Sacramento, CA 95826-3200

13

14 THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Union Pacific Railroad Company, relating to the McCormick & Baxter Superfund Site.

15
                                                 **FOR UNION PACIFIC RAILROAD CO.**
16

17

18 10/3/06                                       /s/ J. Michael Hemmer
  Date                                           J. Michael Hemmer (original signature retained
                                                 by attorney Steven A. Keller)
19                                               Senior Vice President,
                                                 Law and General Counsel
20                                               Union Pacific Railroad Company
                                                 1400 Douglas Street, 19th Floor
21                                               Omaha, NE 68179-1580

22 Agent Authorized to Accept Service on Behalf of Above-signed Party:

23                                               Robert C.  Bylsma, Esq.
                                                 Regional Environmental Counsel
24                                               Union Pacific Railroad Company
                                                 10031 Foothills Blvd., Ste. 200
25                                               Roseville, CA 95747-7101
                                                 (916) 789-6229
26

27

28